**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **RICHARD WHITLEY, on behalf of himself and those similarly situated,** | ) ) ) | |
| | ) | **Case No. 12-cv-2548** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | |
| **J.P. MORGAN CHASE & CO.; J.P. MORGAN INVESTMENT MANAGEMENT INC., aka J.P. MORGAN ASSET MANAGEMENT; J.P. MORGAN RETIREMENT PLAN SERVICES LLC; and J.P. MORGAN DEFINED CONTRIBUTION INVESTMENT SOLUTIONS,** | ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
<u>OR, IN THE ALTERNATIVE, FOR PARTIAL DISMISSAL</u>**

TABLE OF CONTENTS

PAGE

INTRODUCTION ............................................................................................................. 1

MATERIAL FACTS ....................................................................................................... 2

ARGUMENT .................................................................................................................. 6

    I.    The Court Should Enter Judgment In Defendants' Favor On All Of
    Plaintiff's Claims. .................................................................................... 6

        A.    Summary Judgment Standard .................................................... 6

        B.    Summary Judgment Is Appropriate Because The Hospira Plan
            Fund Never Invested In APPCMs............................................... 7

        C.    Plaintiff Cannot Avoid Summary Judgment By Contending That
            Other Plans' Funds Purchased APPCMs From Defendants ..................... 8

    II.    Alternatively, The Court Should Dismiss Plaintiff's Claims On Behalf Of
    Other Plans And Fiduciaries And His Claims Against All Defendants
    Except J.P. Morgan Investment Management. .................................................... 10

        A.    Standard of Review.................................................................. 10

        B.    The Court Should Dismiss Plaintiff's Claims On Behalf Of Plans
            Other Than The Hospira Plan In Which He Participates Because
            He Lacks Statutory Standing ................................................... 11

        C.    The Court Should Dismiss Plaintiff's Claims Against All
            Defendants Except J.P. Morgan Investment Management Because
            He Has Not Pled Facts Sufficient To Establish They Had Relevant
            Fiduciary Status ....................................................................... 17

    CONCLUSION.................................................................................................... 21

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Acosta v. Pac. Enters.*,
   950 F.2d 611 (9th Cir. 1991) ............................................................................14

*Allee v. Medrano*,
   416 U.S. 802 (1974)............................................................................................16

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
   436 F.3d 82 (2d Cir. 2006)................................................................................10

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................................................16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).............................................................................................7

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)........................................................................11, 17, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................10, 17, 18

*Bell v. Pfizer, Inc.*,
   626 F.3d 66 (2d Cir. 2010).................................................................................18

*Blum v. Yaretsky*,
   497 U.S. 991 (1982)..............................................................................................9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..............................................................................................6

*Central States Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC*,
   433 F.3d 181 (2d Cir. 2005)..........................................................................9, 16

*Connecticut v. Physicians Health Servs. of CT, Inc.*,
   287 F.3d 110 (2d Cir. 2002).........................................................................12, 16

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir.1991)..................................................................................19

*Cress v. Wilson*,
   No. 06-Civ. 2717, 2007 WL 1686687 (S.D.N.Y. June 6, 2007) ....................14, 15

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Diagnosis Cardioline Monitoring of New York, Inc. v. Leavitt*,
    171 F. App'x 374 (2d Cir. 2006) ............................................................................10

*Fallick v. Nationwide Mut. Ins. Co.*,
    162 F.3d 410 (6th Cir. 1998) ...................................................................14, 15, 16

*Finkel v. Romanowicz*,
    577 F.3d 79 (2d Cir. 2009).......................................................................................20

*Fisher v. J.P. Morgan Chase & Co.*,
    703 F. Supp. 2d 374 (S.D.N.Y. 2010).....................................................................20

*Forbush v. J.C. Penney Co., Inc.*,
    994 F.2d 1101 (5th Cir. 1993) .................................................................................16

*Gannon v. Aetna Life Ins. Co.*,
    No. 05 Civ. 2160 (JGK), 2007 WL 2844869 (S.D.N.Y. Sept. 28, 2007) ................7

*Gerosa v. Savasta & Co., Inc.*,
    329 F.3d 317 (2d Cir. 2003).....................................................................................11

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)..................................................................................................11

*Hastings v. Wilson*,
    516 F.3d 1055 (8th Cir. 2008) .................................................................................13

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ...................................................................................20

*In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.*,
    756 F. Supp. 2d 330 (S.D.N.Y. 2010).....................................................................18

*In re Direxion Shares ETF Trust*,
    297 F.R.D. 221 (S.D.N.Y. 2012) ...............................................................................9

*In re ING Groep N.V. ERISA Litig.*,
    749 F. Supp. 2d 1338 (N.D. Ga. 2010) ...................................................................14

*In re Reliant Energy ERISA Litig.*,
    336 F Supp. 2d 646 (S.D. Tex. 2004) .....................................................................14

*In re SLM Corp. ERISA Litig.*,
    No. 08 Civ. 4884 (WHP), 2010 WL 3910566 (S.D.N.Y. Sept. 24, 2010) ........13, 14

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,*
    62 F.2d 69 (2d Cir. 1995)..................................................................................................19

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)...................................................................................................8, 9

*Mahoney v. J.J. Weiser & Co., Inc.,*
    564 F. Supp. 2d 248 (S.D.N.Y. 2008)............................................................................18, 20

*Makarova v. United States,*
    201 F.3d 110 (2d Cir. 2000)................................................................................................10

*Mass. Mut. Life Ins. Co. v. Russell,*
    473 U.S. 134 (1985)...................................................................................................11, 12

*McCall v. Chesapeake Energy Corp.,*
    817 F. Supp. 2d 307 (S.D.N.Y. 2011).....................................................................................9

*Mertens v. Hewitt Assoc.,*
    508 U.S. 248 (1993)...................................................................................................12, 16

*Nechis v. Oxford Health Plans, Inc.,*
    421 F.3d 96 (2d Cir. 2005)............................................................................................12, 16

*Pegram v. Herdrich,*
    530 U.S. 211 (2000)........................................................................................................18

*Renfro v. Unisys Corp.,*
    671 F.3d 314 (3d Cir. 2011)..............................................................................................20

*Simon v. Gen. Elec. Co.,*
    263 F.3d 176 (2d Cir. 2001)...........................................................................................13, 16

*Sutton v. Med. Serv. Ass'n of Pa.,*
    No. Civ. A. 92-4787, 1993 WL 273429 (E.D. Pa. July 20, 1993).........................................16

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,*
    549 F.3d 100 (2d Cir. 2008)................................................................................................9

*Wolff v. Rare Medium, Inc.,*
    171 F. Supp. 2d 354 (S.D.N.Y. 2001)..................................................................................11

*Ying Jing Gan v. New York,*
    996 F.2d 522 (2d Cir. 1993)................................................................................................7

**TABLE OF AUTHORITIES**
(continued)

Page

**STATUTES**

29 U.S.C. § 1002(7) ......................................................................................12

29 U.S.C. § 1002(9) ......................................................................................21

29 U.S.C. § 1002(16)(a) ...............................................................................19

29 U.S.C. § 1002(21) ....................................................................................21

29 U.S.C. § 1002(21)(A) ..............................................................................18

29 U.S.C. § 1024(b)(4) .................................................................................19

29 U.S.C. § 1104(a) ........................................................................................7

29 U.S.C. § 1106 .............................................................................................8

29 U.S.C. § 1132(a) .................................................................................12, 17

**OTHER AUTHORITIES**

29 C.F.R. § 2510.3-101(h)(1)(ii) ...................................................................3

93d Cong., 2d Sess. (1974) ..........................................................................17

Fed. R. Civ. P. 12(b) ........................................................................10, 11, 19

Fed. R. Civ. P. 23 .................................................................................. passim

Fed. R. Civ. P. 82 .........................................................................................16

Fed. R. Civ. P. 56 .............................................................................6, 10, 19

H.R. Conf. Rep. No. 1280 ............................................................................17

Article III of the U.S. Constitution ..........................................................8, 16

Defendants[1] submit this memorandum of law in support of their motion for summary judgment or, in the alternative, for partial dismissal of the Complaint.

## INTRODUCTION

All of Plaintiff's claims depend on the unfounded allegation that Defendants caused the Hospira Stable Value Fund to purchase billions of dollars of commercial mortgage assets from J.P. Morgan affiliates during the putative class period.  Defendants are entitled to summary judgment because this allegation is baseless:  in fact, the Stable Value Fund did not purchase any commercial mortgage assets from J.P. Morgan affiliates.

Plaintiff Richard Whitley is a participant in the Hospira 401(k) Retirement Savings Plan (the "Hospira Plan").  The Hospira Plan is a self-directed 401(k) plan, meaning that participants control the investment of their plan accounts and choose from an array of investment options available under the Plan.  The Hospira Stable Value Fund ("Stable Value Fund") is one of these options and is offered through a separate account managed by J.P. Morgan Investment Management, Inc.  Plaintiff's claims hinge exclusively on his allegation that Defendants violated ERISA by causing the Hospira Plan and their other 401(k) plan stable value clients to purchase "proprietary J.P. Morgan mortgage assets" called "alternative private placement commercial mortgages" ("APPCMs") from J.P. Morgan in an effort to unload those "toxic" assets from its corporate books.  (Compl. ¶ 41.)  This factual premise – which undergirds Plaintiff's entire complaint – is incorrect; therefore the Court should enter judgment in Defendants' favor on all counts.

Plaintiff alleges that Defendants caused the Stable Value Fund to purchase APPCMs

---

[1] Defendants are J.P. Morgan Chase & Co., J.P. Morgan Investment Management Inc., J.P. Morgan Retirement Plan Services LLP, and J.P. Morgan Defined Contribution Investment Solutions (collectively "J.P. Morgan" or "Defendants").  By submitting this motion, Defendants do not concede that they are properly named parties to this action.

during the putative class period through investments in the "Intermediate Bond Fund, which in turn invested in APPCMs and other JPM funds." (Compl. ¶ 43.) The indisputable data, however, demonstrate that this allegation is simply incorrect. More specifically, to test Plaintiff's theory, Defendants collected data showing all of the approximately 271,000 transactions made directly or indirectly through the Intermediate Bond Fund during the class period. This data establishes that neither the Intermediate Bond Fund, nor any affiliated fund in which it invested, purchased APPCMs from a J.P. Morgan affiliate. Because all of Plaintiff's claims depend on this allegation, the Court should grant Defendants judgment on all counts. Nor can Plaintiff avoid summary judgment claiming he can represent some other plans that supposedly purchased APPCMs through the Intermediate Bond Fund. Plaintiff lacks constitutional standing to bring such a claim, even assuming the allegation was true (and it is not, as the data clearly demonstrate).

In the alternative, if the Court does not grant Defendants summary judgment, the Court should dismiss all claims Plaintiff purports to bring on behalf of plans (and trustees of plans) in which he does not participate. ERISA authorizes a participant to sue only to challenge the administration of his *own* plan, and Plaintiff lacks both statutory and constitutional standing to bring claims on behalf of any plans other than the Hospira Plan. Thus, if Mr. Whitley's claims can proceed at all, they must be limited *at most* to claims on behalf of the Hospira Plan and, even then, to claims brought against J.P. Morgan Investment Management.

## **MATERIAL FACTS**[2]

Plaintiff is a participant in the Hospira 401(k) Retirement Savings Plan and, during the class period, invested all or part of his Plan account in the Hospira Stable Value Fund. (Compl. ¶

---

[2] Defendants incorporate by reference their Local Rule 56.1 Statement of Undisputed Material Facts filed on this day, which sets forth the undisputed material facts of this case. References to Defendants' Statement of Undisputed Material Facts will appear as "SOF."

12.)  The Stable Value Fund is offered to participants in the Hospira Plan through a separate account managed by J.P. Morgan Investment Management solely for participants in the Hospira Plan.  (SOF ¶ 2.)

According to Plaintiff, from 2007 to 2010, the performance of the Stable Value Fund "changed dramatically" and "competitor stable value funds and even the Fund's performance benchmarks markedly outperformed the Fund."  (Compl. ¶ 38.)  Plaintiff attributes this alleged performance deficiency to allegations that "during the class period, Defendants caused the Fund to purchase certain proprietary [J.P. Morgan] mortgage assets known as [APPCMs]."  (*Id.* ¶ 41.)  Plaintiff alleges that Defendants made these investments through the Intermediate Bond Fund.  (*Id.* ¶ 43.)  All of Plaintiff's claims rest on two key factual allegations – that, during the putative class period:  (1) J.P. Morgan sold APPCMs to the Hospira Plan from its own accounts, and (2) J.P. Morgan owned and issued the APPCMs.  (*Id.* ¶¶ 41-43.)  These allegations are incorrect.

The Stable Value Fund invested in three types of assets:  (1) cash and other liquid investments, (2) guaranteed investment contracts ("GICs") that were not issued by Defendants, and (3) the J.P. Morgan Intermediate Bond Fund.  (SOF ¶ 4.)  The liquid instruments were comprised of cash and short term cash equivalent securities and are not APPCMs.  (SOF ¶ 6.)  The GICs are investment contracts issued by entities, such as banks and insurers, that are not affiliated with J.P. Morgan.  The GICs guarantee a specified rate of return on assets transferred to the issuers by the Hospira Plan, are not mortgage related securities, and thus are not APPCMs.  (SOF ¶ 5.)

The Intermediate Bond Fund is a collective investment fund.[3]  It makes investments both directly in fixed income securities such as Treasury and agency debentures, asset-backed

---

[3]  For purposes of this motion only, Defendants do not contest that the Hospira Plan's assets are deemed to include its investment and an undivided interest in each of the underlying assets of the Intermediate Bond Fund and the other collective investment funds in which it invested.  *See* 29 C.F.R. § 2510.3-101(h)(1)(ii).

securities, and mortgage-backed securities, and indirectly through other J.P. Morgan collective investment funds.  (SOF ¶ 8.)

The data detailing all of the assets purchased directly and indirectly by the Intermediate Bond Fund during the putative class period establishes that the Intermediate Bond Fund did not purchase APPCMs from J.P. Morgan affiliates.  (*Id.* ¶¶ 9-21.)  Judith Bryngil, a Vice President in J.P. Morgan's Legal and Compliance Department, researched all of the 271,701 trades that the Intermediate Bond Fund made directly or indirectly during the putative class period.[4]  (SOF ¶¶ 9-10.)

Ms. Bryngil first filtered the data to remove transaction types that could not by definition be purchases of APPCMs.  For example, the transaction type "transfer" does not involve the movement of a security into or out of the fund.  (SOF ¶ 10.)  Instead, it reflects trading in a security being put on hold (*e.g.* if it is being used as collateral) or the removal of such a restriction.  (*Id.*)  Since this kind of transaction does not involve the movement of a security into or out of the fund, it cannot be a purchase of an APPCM.  (*Id.*)  Ms. Bryngil also filtered the data to remove transaction categories that included only transactions in securities that cannot be APPCMs, such as Treasury debt and mortgage securities issued by agencies such as Fannie Mae, Ginnie Mae, and Freddie Mac.  (*Id.* at ¶¶ 11-13.)

These filters left only transactions in the "Bond/Mortgage – CMO" category that were "buy," "receive," or "short cover."  (SOF ¶ 14.)  The Bond/Mortgage – CMO category included both transactions in securities that cannot be APPCMs (such as Fannie Mae and Freddie Mac securities) and transactions in securities that could, in theory, be APPCMs. There were only 897 trades within the putative class period meeting these criteria – *i.e.*, that could conceivably have

---

[4]  Because the data is voluminous, Defendants have not attached it to their filing.  Defendants will provide the data to Plaintiff and will, of course, provide it to the Court should the Court request a copy.

involved purchases of APPCMs.  (*Id.*)

Ms. Bryngil directed technical support personnel to match these 897 trades against two databases of securities, iLite and Bloomberg, to identify trades in newly issued securities.  (SOF ¶ 16.)  This process identified only fourteen trades in twelve newly issued securities.  Thus, 883 of the 897 transactions were secondary market transactions and fourteen were trades in new issues.  Ms. Bryngil investigated the fourteen trades in newly issued securities and found only five trades in three securities that were issued by a J.P. Morgan affiliate.  (*Id.* ¶¶ 16-17.)  Ms. Bryngil determined that these trades all involved securitized packages of automobile loans. (SOF ¶ 19.)  None of them were private commercial mortgages and, thus, could not be APPCMs. (*Id.* ¶ 16.)

Ms. Bryngil then investigated the 883 secondary market transactions and found that none of these transactions were purchases of APPCMs.  (SOF ¶¶ 18-19.)  Four hundred of the 883 secondary market transaction records identified the broker/dealer from whom the security was purchased or received.  None of these transactions involve an affiliated broker/dealer.  (*Id.* ¶ 18.) Therefore, because these all involve transactions with unaffiliated entities, they cannot be purchases of APPCMs from J.P. Morgan, as alleged in the Complaint.  (*Id.*)  Ms. Bryngil reviewed the remaining 483 secondary market transactions that identified no broker/dealer information.  She first removed all transactions involving securities that cannot be APPCMs, such as Treasury debt securities and Fannie Mae or Freddie Mac mortgage securities.  (SOF ¶ 19.)  This left transactions in 55 securities.  Ms. Bryngil reviewed each of these securities on Bloomberg to determine their identities, and none involved securities issued by a J.P. Morgan affiliate and none were purchased from J.P. Morgan.  (*Id.*)

Although the Intermediate Bond Fund indirectly invested a portion of its assets in private

(non-securitized) commercial mortgages, it did not purchase these loans from J.P. Morgan.  The

Intermediate Bond Fund invests in private mortgages through a fund called the Mortgage Private

Placement Fund ("MPPF").  (*Id.* ¶ 20.)  The MPPF did not purchase any assets from J.P.

Morgan.  (*Id.*)  Instead, it issued its own commercial loans and typically held these loans to

maturity or prepayment by the borrower.  (*Id.*)  In other words, the MPPF made loans directly to

commercial ventures secured by mortgages.  These direct loans cannot be the APPCMs that are

the heart of Plaintiff's allegations for the simple reason that they were never issued by J.P.

Morgan and then purchased by the MPPF (or any other fund holding Hospira Plan assets) from

J.P. Morgan's capital account.  (*Id.*)

Thus, the undisputed facts establish that the Stable Value Fund did not purchase any

APPCMs from Defendants and Plaintiff cannot prove this critical element of his claims.

## ARGUMENT

**I.  The Court Should Enter Judgment In Defendants' Favor On All Of Plaintiff's Claims.**

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 mandates the entry of judgment against a non-movant

who fails to offer admissible evidence sufficient to establish every element essential to his case

on which he bears the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Although a defendant bears the initial responsibility of asserting the basis for its motion, the

defendant must only show that there is an absence of evidence to establish an essential element

of plaintiff's case.  *Id.* at 322-23.  After a defendant has met its initial burden, the plaintiff must

present competent evidence designating "specific facts showing that there is a genuine issue for

trial."  *Id.* at 324 (citation and quotation omitted).  Although the court must view all evidence in

the light most favorable to plaintiff, the mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, a plaintiff must establish a genuine dispute of material fact. *Id.* To meet this burden, plaintiff "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the [nonmoving] party's pleading." *Ying Jing Gan v. New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (internal quotation marks and citations omitted). "Summary judgment is appropriate if it appears the non-moving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden at trial." *Gannon v. Aetna Life Ins. Co.*, No. 05 Civ. 2160 (JGK), 2007 WL 2844869, at *9 (S.D.N.Y. Sept. 28, 2007) (Koeltl, J.).

> **B.      Summary Judgment Is Appropriate Because The Hospira Plan Fund Never Invested In APPCMs.**

The Court should enter judgment for Defendants on all of Plaintiff's claims because the indisputable data from the putative class period demonstrate that the Stable Value Fund did not purchase APPCMs from J.P. Morgan and Plaintiff, therefore, cannot establish the critical element of his claims.

Counts I and II allege violations of ERISA's duties of prudence and loyalty in 29 U.S.C. § 1104(a). In Count I, Plaintiff alleges that Defendants "inappropriately invested the Fund in securities (APPCMs) that were far too risky for the stated and/or reasonable objectives of such a fund." (*Id.* at ¶ 95.) All of the sub-allegations in this count also depend on this allegation. (*See, e.g., id.* ("In selling these overly risky securities to the Fund, Defendants exacted unreasonable fees from the Fund").) Count II also depends on the allegation that "Defendants . . . caused the plans invested in the Fund to purchase – again, from themselves – and hold substantially overvalued, overly risky mortgage assets (APPCMs)." (*Id.* at ¶ 100.) Counts III and IV allege

that Defendants engaged in transactions prohibited by 29 U.S.C. § 1106 when they "caused the Fund to purchase and hold substantially overvalued and unduly risky mortgage assets *from themselves*." (*Id.* at ¶¶ 110, 115 (emphasis in original).)

As described in detail above, the relevant transaction data from the putative class period undisputedly establish that the Stable Value Fund did not purchase APPCMs issued by J.P. Morgan. (SOF ¶¶ 4-21.) This dooms Plaintiffs' claims and the Court should enter judgment in Defendants' favor on all counts.

### C. Plaintiff Cannot Avoid Summary Judgment By Contending That Other Plans' Funds Purchased APPCMs From Defendants.

Because it is clear that the Hospira Stable Value Fund did not invest in APPCMs, the Court's inquiry can and should properly stop here. Plaintiff may try to avoid summary judgment, however, by contending that his claims on behalf of *other* plans and their trustees can proceed. Plaintiff contends that he can represent every one of Defendants' other 401(k) plan clients, claiming that they invested in the "Intermediate Bond Fund, which in turn invested in APPCMs and other JPM funds," which then supposedly invested in APPCMs and other J.P. Morgan funds. (Compl. ¶¶ 26, 43.) Mr. Whitley does not have constitutional standing to assert such a claim, even assuming his allegations were true (and they are not; the data clearly establish that the Intermediate Bond Fund did not purchase APPCMs either directly or indirectly on behalf of *any* plan). (SOF ¶¶ 4-21.)

Article III of the U.S. Constitution has long been interpreted to limit federal court jurisdiction to instances where a plaintiff has satisfied the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To prove this jurisdictional minimum, the plaintiff must establish that: 1) he suffered an injury-in-fact; 2) there is a causal connection between this injury and the challenged conduct; and 3) it is likely that the injury

would be redressed by a favorable decision.  *Id.* at 560-61.

Filing a suit as a class action does not relax these constitutional requirements.  *See Central States Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005).  As the Supreme Court explained in *Lewis v. Casey*:

> That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.

518 U.S. 343, 357 (1996) (emphasis added, quotation marks omitted); *see also Blum v. Yaretsky*, 497 U.S. 991, 1001 n.13 (1982) (finding no standing where plaintiff was not injured by challenged conduct but alleged that members of the absent putative class had been); *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 n.5 (2d Cir. 2008) ("district courts should be mindful that *named* plaintiffs in a class action must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong or which they purport to represent." (emphasis in original, internal citations omitted)).

Plaintiff, therefore, cannot point to injuries suffered by other plans to support his own claims, even assuming such injuries existed.  It is undisputable that there is no causal connection between any injury to Mr. Whitley and an allegation that Defendants caused other plans – in which Plaintiff has no interest at all – to purchase APPCMs.  And, because he has no interest in these other plans, Mr. Whitley's supposed injuries will not be redressed by any relief that could be awarded to them.  Thus, he cannot represent a class of individuals who allegedly have been injured.  *See, e.g., Lewis*, 518 U.S. at 357; *In re Direxion Shares ETF Trust*, 297 F.R.D. 221, 229 (S.D.N.Y.  2012) ("[a] rule of procedure, like Rule 23, cannot, however, create standing where standing simply does not exist."); *McCall v. Chesapeake Energy Corp.*, 817 F. Supp. 2d 307,

313-14 (S.D.N.Y. 2011) (rejecting argument that standing inquiry should be delayed until class certification).

## II.   Alternatively, The Court Should Dismiss Plaintiff's Claims On Behalf Of Other Plans And Fiduciaries And His Claims Against All Defendants Except J.P. Morgan Investment Management.

Because the undisputed facts establish that Defendants are entitled to summary judgment in their favor, the Court need not reach Defendants' motion to dismiss.  If the Court does reach the alternative motion, however, it should dismiss:  (1) Plaintiff's claims brought on behalf of any plan other than the Hospira Plan pursuant to Rule 12(b)(1) because Plaintiff lacks statutory standing to bring such claims; and (2) all claims against all Defendants except J.P. Morgan Investment Management pursuant to Rule 12(b)(6) because Plaintiff has failed to sufficiently allege – and cannot accurately amend his pleading to allege – that they had any relevant fiduciary status.

### A.   Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  On a 12(b)(1) motion, the plaintiff bears the burden of proof with respect to jurisdiction.  *See Diagnosis Cardioline Monitoring of New York, Inc. v. Leavitt*, 171 F. App'x 374, 375 (2d Cir. 2006).  In considering a Rule 12(b)(1) motion challenging a plaintiff's standing, courts may look beyond the allegations of the complaint and consider matters presented in affidavits or an evidentiary hearing without converting the motion into a motion for summary judgment under Rule 56.  *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87-88 (2d Cir. 2006).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  A plaintiff must plead sufficient "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the possibility that defendant acted unlawfully is not enough.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quotations omitted).  Although pleading requirements are construed liberally, "[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader.  If it fails to do so, a motion under Rule 12(b)(6) will be granted." *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (citation omitted).

### B. The Court Should Dismiss Plaintiff's Claims On Behalf Of Plans Other Than The Hospira Plan In Which He Participates Because He Lacks Statutory Standing.

Plaintiff purports to bring claims on behalf of every plan that utilized J.P. Morgan Investment Management, Inc. or its investment funds for all or part of its stable value fund, and on behalf of every trustee of every such plan.  ERISA, however, does not authorize such sweeping suits.  ERISA authorizes participants to bring suits challenging only the administration of the plans in which they participate.  The Court, therefore, should dismiss Plaintiff's claims purportedly brought on behalf of any plan other than the Hospira Plan in which he participates pursuant to Rule 12(b)(1).

As the Supreme Court has repeatedly stated, ERISA is a complex, reticulated statute with carefully crafted civil enforcement provisions.  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002), citing *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 251 (1993) and *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985); *see also Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 322 (2d Cir. 2003) (because ERISA's express remedies are the product of long

and careful compromise, they should remain exclusive, leaving little room for "judicially-created interstitial remedies"). Furthermore, ERISA resulted from numerous compromises, not all of which favored potential plaintiffs. *Mertens*, 508 U.S. at 262. As such, courts should not create or infer causes of action beyond those Congress expressly adopted. *Russell*, 473 U.S. at 147; *Mertens*, 508 U.S. at 254. ERISA simply does not authorize suits by participants to remedy alleged breaches of duties owed to other plans in which they do not participate.

In relevant part, ERISA's civil enforcement provision authorizes suits only by a "participant." 29 U.S.C. § 1132(a).[5] ERISA in turn defines a "participant" by reference to his or her eligibility for benefits from a *particular plan* sponsored by a *particular employer*. 29 U.S.C. § 1002(7) (defining participant as "an employee or former employee of an employer . . . who is or may become eligible to receive a benefit . . . from an employee benefit plan *which covers employees of such employer*") (emphasis added). Read together, these provisions quite logically establish that an individual may bring suit under section 1132(a) only with respect to the plans from which he is or may become eligible to receive benefits – *i.e.* those in which he participates. And, quite logically, nothing in the statute authorizes a participant to bring suits related to plans from which he cannot receive benefits and as to which he has no legitimate interest.

Not surprisingly, given these clear statutory limitations, the Second Circuit has held that a plaintiff lacks standing to challenge decisions affecting ERISA plans in which he does not participate. *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 101 (2d Cir. 2005) (plaintiff must be a participant to have standing under ERISA); *Connecticut v. Physicians Health Servs. of CT, Inc.*, 287 F.3d 110, 112, 120-21 (2d Cir. 2002) ("[b]ecause Congress 'carefully drafted' § 1132, parties other than those explicitly named therein – plan participants, beneficiaries, and fiduciaries

---

[5] It is undisputed, for example, that Plaintiff is not a fiduciary or beneficiary and, obviously, he is not the Secretary of Labor.

– may not bring suit."); *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 177 (2d Cir. 2001) (plaintiff who "is neither a participant nor beneficiary of the plan under which his benefit claim arises . . . cannot bring suit under [ERISA § 1132]").

Nor does it matter that Plaintiff is a participant in the Hospira Plan; this fact does not somehow enable him to sue on behalf of other plans in which he does not participate ("Other Plans").  Allowing such suits would make little sense given the fact that unrelated plans have their own participants and fiduciaries who are armed by ERISA to sue if the factual circumstances of their plans warrant it.

Judge Pauley recently rejected a similar attempt by plaintiffs to represent participants in a plan in which they did not participate.  *See In re SLM Corp. ERISA Litig.*, No. 08 Civ. 4884 (WHP), 2010 WL 3910566, at *12 (S.D.N.Y. Sept. 24, 2010).  In that case, the plaintiffs participated in the Sallie Mae 401(k) Savings Plan (the "Savings Plan"), but not the Sallie Mae 401(k) Retirement Savings Plan (the "Retirement Plan").  Nonetheless, they attempted to bring class action ERISA claims on behalf of both the Savings Plan and the Retirement Plan.  *Id.* at *1.  The defendants moved to dismiss the claims purportedly brought on behalf of the Retirement Plan, arguing that the plaintiffs lacked statutory standing because they were not "participants" in that plan.  The Southern District agreed, ruling that the plaintiffs lacked statutory standing to sue on behalf of the Retirement Plan, even though it was clear they were participants in the Savings Plan and even though the Retirement Plan was sponsored by the same employer.  *Id.* at *12.  The same analysis dooms Plaintiff's claims on behalf of Other Plans here.  *Id.*

Other courts too have rejected attempts by class action plaintiffs to bring claims on behalf of plans in which they do not participate.  *See, e.g., Hastings v. Wilson*, 516 F.3d 1055, 1061 (8th Cir. 2008) (plaintiffs lacked statutory standing to assert ERISA fiduciary breach claims on behalf

of pension plan of which they were neither participants nor beneficiaries and cannot use the class action vehicle to confer standing); *In re ING Groep N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1345-46 (N.D. Ga. 2010) (class action plaintiffs, participants in an ERISA 401(k) plan, lacked both statutory and constitutional standing to assert claims on behalf of a second ERISA 401(k) plan in which they were not participants and for which they could not establish an injury in fact); *In re Reliant Energy ERISA Litig.*, 336 F Supp. 2d 646, 653-54 (S.D. Tex. 2004) (class plaintiff lacks standing to bring claims on behalf of plans of which he was never a participant, beneficiary, or fiduciary).[6]

Defendants note that this Court addressed this issue in *Cress v. Wilson*, No. 06-Civ. 2717, 2007 WL 1686687 (S.D.N.Y. June 6, 2007) (Koeltl J.), and concluded, based on Sixth Circuit precedent, that a participant's ability to sue on behalf of ERISA plans in which he does not participate is limited only by Rule 23. *Cress*, which was decided before *In re SLM*, is distinguishable and, respectfully, the out of circuit precedent on which it relied was mistakenly decided, an issue that was not fully briefed or argued before this Court.[7]

In *Cress*, the plaintiffs sought to represent three ERISA plans but had participated in only two. The defendants argued plaintiffs lacked statutory standing to represent the third plan because they were not participants in that plan. The plaintiffs responded arguing that they could represent the third plan because "the assets of the Plans are held in a single, commingled unitary trust" and because they could satisfy the Rule 23 class action standards, citing *Mulder v. PCS Health Sys., Inc.*, 216 F.R.D. 307 (D.N.J. 2003) and *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998). *Cress*, 2007 WL 1686687, at *10. The defendants failed to respond to

---

[6] *See also Acosta v. Pac. Enters.*, 950 F.2d 611 (9th Cir. 1991) (participant in one of various plans administered on behalf of a single company lacks standing to challenge decisions affecting ERISA plans in which he does not participate).

[7] In *Cress*, the defendants failed to respond to the plaintiffs' argument that they could represent other plans in which they did not participate. 2007 WL 1686687, at *10.

this argument, (06-cv-2717, Dkt. 24), leading this Court to note that the plaintiff's argument had not been rebutted and ultimately to allow their claims on behalf of the third plan to proceed. *Id.*

At the outset, *Cress* is readily distinguishable.  In *Cress*, the plaintiffs sought to represent just three plans, all of which were sponsored by a single company, Northwest Airlines.  By contrast, Plaintiff seeks to represent hundreds of ERISA plans sponsored by hundreds of unrelated companies across the nation.  Plaintiff has no connection at all to these other plans and plan sponsors.  In *Cress*, Northwest made many of the relevant fiduciary decisions for all three plans.  *Cress*, 2007 WL 1686687 at *2 ("During the class period, the Plans and their assets were managed by committees selected and monitored by Northwest's Board of Directors . . .").  In this case, each of the hundreds of plans Plaintiff purports to represent will have its own fiduciaries who independently manage their plans and make independent fiduciary decisions regarding their plans and their stable value funds.  None of those fiduciaries, of course, have any connection to the Hospira Plan.  Nothing in the statute remotely imbues every participant in an ERISA plan with the roving power to police supposed wrongs against every other ERISA plan in the nation simply because they happen to share a service provider or a single investment.

In addition, and as set forth below, Defendants do not fail to rebut the notion that Rule 23 creates statutory standing where none otherwise exists.  In *Fallick*, the Sixth Circuit recognized that, in an individual suit, a plaintiff may only sue for breaches related to the plan in which he participates.  162 F.3d at 422 n. 9.  Nonetheless, the Sixth Circuit went on to state that, in a class action, "the standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the challenged conduct, regardless of the representative's lack of participation in all the ERISA governed plans involved."  *Id.* at

423.[8]  This *dictum* has it exactly backwards.

It is axiomatic that Rule 23 cannot expand statutory rights.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge, or modify any substantive right.'"); *see also* Fed. R. Civ. P. 82 ("These rules do not extend . . . the jurisdiction of the district courts.").

Thus, whether a claim is brought individually or as a putative class action is simply irrelevant to the question of standing.  *E.g.*, *Lewis*, 518 U.S. at 357 ("That a suit may be a class action . . . adds nothing to the question of standing"); *Allee v. Medrano*, 416 U.S. 802, 829 (1974) ("Standing cannot be acquired through the back door of a class action.").  Rather, if the named plaintiff lacks standing to maintain a particular claim, he cannot represent a class of people who do have standing.  *See, e.g.*, *Central States Se. and Sw. Areas Health and Welfare Fund,* 433 F.3d at 199 (named plaintiffs must show they individually have standing, not that unidentified members of the putative class do).  It is beyond any question that, in an individual action, Plaintiff would lack standing to sue on behalf of any plan other than the Hospira Plan in which he participated.  Indeed, even *Fallick* recognized as much.  162 F.3d at 422.  The fact that he has brought this suit as a putative class action cannot change this fact.

In addition, the question is not whether ERISA "bar[s]" a suit, but rather "whether the statute affirmatively authorizes such a suit."  *Mertens*, 508 U.S. at 254 n.5.  ERISA's statutory language does not authorize a plaintiff to challenge decisions affecting ERISA plans in which he

---

[8]  The Sixth Circuit relied for this proposition on *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101 (5th Cir. 1993), and *Sutton v. Med. Serv. Ass'n of Pa.*, No. Civ. A. 92-4787, 1993 WL 273429, at *5 (E.D. Pa. July 20, 1993). Neither decision adds anything to the analysis.  Neither *Forbush* nor *Sutton* cited, let alone addressed, *Nechis*, *Physicians Health Servs.*, or *Simon*, the key Second Circuit decisions on ERISA standing.  Furthermore, *Forbush* was not even a standing case and made no attempt to analyze the interplay between ERISA's statutory standing requirements and Rule 23.  Likewise, *Sutton* also failed to consider the interplay between Rule 23 and statutory standing, reasoning that the named plaintiff could represent the class because the action would not "expand" the remedies available under ERISA.

does not participate.  *See* 29 U.S.C. § 1132(a).  These provisions are no accident.  ERISA's

legislative history indicates that Congress intended to limit participant claims for breach of

fiduciary duty to participants' *own* plans.  *See* H.R. Conf. Rep. No. 1280, at 148, 327, 93d Cong.,

2d Sess. (1974), *reprinted in*, 3 Leg. Hist. 4594 ("[i]n addition to being able to request the

Secretary of Labor to bring suit on their behalf . . . .individual participants and beneficiaries will

also be able to bring suit in Federal court . . . to obtain redress of fiduciary violations. . . . [and]

participants and beneficiaries may bring suit to recover benefits denied contrary to the terms of

*their* plan . . . .") (emphasis added).  In contrast, Congress intended to vest the Secretary of Labor

with broad public powers to enjoin "practices" by fiduciaries which allegedly violate ERISA

provisions. *Id.*  Thus, ERISA provides a statutory mechanism for broad groups of employee

benefit plans to have their rights asserted by the Secretary, not through "private attorney general"

participant lawsuits under Rule 23.  Permitting Mr. Whitley to bring suit on behalf of other plans

in which he does not participate would effectively eliminate the requirement of statutory

standing and invade the sphere of public enforcement delegated to the Secretary.

     If the Court does not grant Defendants summary judgment, it should nonetheless dismiss

Plaintiff's claims to the extent they are brought on behalf of Other Plans.

###    C.    The Court Should Dismiss Plaintiff's Claims Against All Defendants Except J.P. Morgan Investment Management Because He Has Not Pled Facts Sufficient To Establish They Had Relevant Fiduciary Status.

     Plaintiff claims that all Defendants were ERISA fiduciaries with respect to the

management of the Stable Value Fund and bases his conclusion on the same general factual

allegations, pled for all of the Defendants.  These general and conclusory allegations are clearly

insufficient to state a claim after *Twombly*, 550 U.S. 533, and *Iqbal*, 556 U.S. 662.  The Court,

therefore, should dismiss the Complaint with respect to all Defendants other than J.P. Morgan

Investment Management – the entity that actually managed the Stable Value Fund.

Under ERISA, a person is a fiduciary with respect to a plan only "to the extent that" he (1) exercises discretionary authority or control respecting plan management or plan assets, (2) renders investment advice for a fee, or (3) has discretionary authority or responsibility for plan administration.  29 U.S.C. § 1002(21)(A); *Bell v. Pfizer, Inc.*, 626 F.3d 66, 73-74 (2d Cir. 2010) (an entity is an ERISA fiduciary only "to the extent" it exercises discretionary authority or control over plan assets).  Thus, in every breach of fiduciary duty case, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is performing a fiduciary function) *when taking the action subject to complaint*."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (emphasis added).

In other words, an "individual may be an ERISA fiduciary for one purpose, but is not necessarily a fiduciary for other purposes."  *In re Bank of Am. Corp. Sec., Derivative, and ERISA Litig.*, 756 F. Supp. 2d 330, 346 (S.D.N.Y. 2010) (citing *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002)).  For fiduciary liability to arise, there must be some connection between the discretion exercised and the breach of fiduciary duty.  *Mahoney v. J.J. Weiser & Co., Inc.*, 564 F. Supp. 2d 248, 257 (S.D.N.Y. 2008).

Here, Plaintiff has alleged a fiduciary breach with respect to only one function:  the management of the Stable Value Fund.  (Compl. ¶¶ 92-105.)  Plaintiff, however, has completely failed to allege facts sufficient to establish that each Defendant was a fiduciary with respect to the management of the Stable Value Fund.  For example, Plaintiff alleges that each Defendant "was a fiduciary with respect to the Fund at all relevant times."  (Compl. ¶¶ 14-16.)  These are precisely the kind of conclusory allegations that are insufficient in the wake of *Twombly*, 550 U.S. at 570 and *Iqbal*, 129 S.Ct. at 1949.  Plaintiff also alleges that all Defendants "served as

Investment Advisor, Investment Manager, Administrator, Trustee and/or Custodian of the plans' fund(s)." (Compl. ¶ 21; *see also* ¶ 76.) These allegations, too, fall woefully short of meeting Plaintiff's pleading burden.

First, Plaintiff's scattershot approach to pleading is obviously flawed. It is clear, for example, that each of the four Defendants was not the "Administrator" for each plan since ERISA contemplates designation of a single plan administrator. 29 U.S.C. § 1002(16)(a).[9] Furthermore, Plaintiff's pleading simply ignores the Hospira Plan document, which identifies the plan administrator as "the Senior Vice President of Organizational Transformation and People Development or, if there is no person by such title, such other person acting as chief human resources officer of Hospira, Inc., unless the Board of Review appoints another entity or person(s) to administer the Plan." Hospira, Inc. 401(k) Retirement Plan (the "Hospira Plan"), attached to Exhibit A to the Declaration of Melissa D. Hill ("Hill Decl."), at § 15.4.[10]

Similarly, Plaintiff fails to describe, even in a conclusory fashion, how each Defendant's supposed status as an "Investment Advisor," "Investment Manager," "Administrator," "Trustee," and "Custodian" translates into fiduciary status at all, much less with respect to the Stable Value Fund or to his allegations that Defendants collectively caused the Stable Value Fund to purchase APPCMs from J.P. Morgan. Simply pleading that a defendant had a certain role or title is insufficient to establish they had fiduciary status relative to the challenged conduct.

---

[9] This section states that "[t]he term 'administrator' means – (i) the person specifically so designated in the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor . . . ." 29 U.S.C. § 1002(16)(a).

[10] The Court may properly consider the Hospira Plan document without converting the Rule 12(b)(6) motion to a Rule 56 motion. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir.1991) (district court could have considered attachments to motion to dismiss where there "was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim"). The Hospira Plan document has always been available to Plaintiff. *See* 29 U.S.C. § 1024(b)(4) (requiring plan administrator to provide Plaintiff with a copy of the plan document upon request). Moreover, the Hospira Plan is incorporated by reference in the Complaint (*see, e.g.*, ¶ 12), and can properly be considered here. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.2d 69, 72 (2d Cir. 1995) (a "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference") (citing *Cortec Indus.*, 949 F.2d at 47)).

In *Renfro v. Unisys Corp.*, 671 F.3d 314, 324-25 (3d Cir. 2011) and *Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009), two groups of plaintiffs alleged that Fidelity was their plan's trustee and claimed breaches of ERISA fiduciary duties related to plan fees and expenses. The Third and Seventh Circuits, however, easily affirmed dismissal of both complaints, concluding that allegations in those complaints, which went far beyond Plaintiff's shotgun allegation that all Defendants collectively held certain titles, were insufficient to establish that Fidelity was a fiduciary *and that it had fiduciary status with respect to the challenged conduct.* Plaintiff's conclusory allegations, therefore, are insufficient to establish that the Defendants were fiduciaries with respect to the alleged conduct.  *Id.*; *see also Mahoney*, 564 F. Supp. 2d at 257 (although defendants may have been fiduciaries with respect to processing of claims, defendants were not fiduciaries with respect to claims alleged in the complaint); *Finkel v. Romanowicz*, 577 F.3d 79, 86-87 (2d Cir. 2009) (affirming dismissal of fiduciary duty claims where plaintiff failed to allege defendant engaged in any activities which would make him a fiduciary under ERISA); *Fisher v. J.P. Morgan Chase & Co.*, 703 F. Supp. 2d 374, 381-82 (S.D.N.Y. 2010) (granting defendants judgment on the pleadings for breach of fiduciary duty claim where plaintiffs failed to allege facts sufficient to show defendants were actual or *de facto* fiduciaries).

Nor can Plaintiff amend his complaint to plead around this deficiency.  For example, Plaintiff could not credibly allege that J.P. Morgan Retirement Plan Services LLC ("RPS") serves as a fiduciary, administrator, or investment manager of the Plan, as irrefutable documents integral to any such allegations – namely, the operative recordkeeping agreement between the Plan and RPS – would demonstrate otherwise.  Likewise, Plaintiff cannot in good faith allege facts sufficient to establish that J.P. Morgan Chase & Co. operated in any fiduciary capacity with respect to the Hospira Plan.  Finally, J.P. Morgan Defined Contribution Investment Solutions is

not an identifiable corporate entity that can be sued.  As such, it cannot be a fiduciary.[11]

The Court, therefore, should dismiss Plaintiff's claims with respect to all Defendants except J.P. Morgan Investment Management.

## **CONCLUSION**

For the reasons set forth above, the Court should grant summary judgment in favor of Defendants on all of Plaintiff's claims or, in the alternative, the Court should dismiss the claims asserted in Plaintiff's complaint with prejudice.

---

[11]  Only a "person" can be a fiduciary.  29 U.S.C. § 1002(21).  A line of business, as opposed to a corporation, is not a person.  *See* 29 U.S.C. § 1002(9) (defining "person").

Dated: July 17, 2012
     New York, New York

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP


By:  /s Melissa D. Hill
       Melissa D. Hill
       101 Park Avenue
       New York, NY  10178-0060
       Tel. 212.309.6318
       Fax 212.309.6001
       melissa.hill@morganlewis.com

       Gregory C. Braden
       1111 Pennsylvania Avenue, NW
       Washington, D.C.  20004
       Tel. 202.739.5217
       Fax 202.739.3001
       gbraden@morganlewis.com

       Azeez Hayne
       1701 Market Street
       Philadelphia, PA  19103
       Tel. 215.963.5426
       Fax 215.963.5001
       ahayne@morganlewis.com

       *Attorneys for Defendants*