**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **RICHARD WHITLEY, CAROLETA DURAN, TERRY J. KOCH, MARK D. GRADY, JOHN M. GATES, and SCOTT NEWELL, on behalf of himself and those similarly situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) ) | **Case No. 12-cv-2548** |
| **v.** | ) ) | |
| **J.P. MORGAN CHASE & CO.; J.P. MORGAN CHASE BANK, N.A.; J.P. MORGAN INVESTMENT MANAGEMENT INC., aka J.P. MORGAN ASSET MANAGEMENT; J.P. MORGAN RETIREMENT PLAN SERVICES LLC,** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................ 3

        1.    The Parties ................................................................................... 3

        2.    Stable Value Fund Background Information ............................... 4

III.  THE COURT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY ................. 6

    A.    Standard of Review ................................................................................. 6

    B.    Counts I and II Fail To Plead Facts Sufficient To State A Plausible Claim ......... 6

    C.    The Court Should Dismiss Count III Because Defendants Had No Duty To Disclose Investment Information Under ERISA ................................................. 13

    D.    The Court Should Dismiss Plaintiffs' Prohibited Transaction Claims In Counts IV and V For Failure To State A Claim .................................................. 15

IV.  ALTERNATIVELY, THE COURT SHOULD DISMISS IN PART THE FIRST AMENDED COMPLAINT FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM ................................................................................................... 17

    A.    The Court Should Dismiss Plaintiffs' Claim On Behalf of Plans in Which They Did Not Participate Because They Lack Statutory Standing ..................... 17

        1.    Standard for Dismissal ............................................................. 17

        2.    Plaintiffs Lack Statutory Standing To Sue On Behalf Of Plans In Which They Did Not Participate ............................................. 18

    B.    The Court Should Dismiss The Caterpillar Plaintiffs' Claims Arising Before September 10, 2009 Because They Were Released In A Prior Class Settlement ............................................................................................... 24

    C.    The Court Should Dismiss Plaintiffs' Claims Against JPMC And RPS Because They Are Not ERISA Fiduciaries ......................................................... 25

V.   CONCLUSION ................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Acosta v. Pac. Enters.*,
   950 F.2d 611 (9th Cir. 1991) ....................................................................20

*Allee v. Medrano*,
   416 U.S. 802 (1974).................................................................................23

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
   436 F.3d 82 (2d Cir. 2006).......................................................................18

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................................................22

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ...................................................................... passim

*Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*,
   107 F.3d 139 (2d Cir. 1997)..............................................................13, 14

*Bd. of Trs. of the Operating Eng'rs Pension Trust v. J.P. Morgan Chase Bank, N.A.*,
   No. 09 Civ. 9333, 2012 WL 1382274 (S.D.N.Y. Apr. 20, 2012)........................9, 12

*Bd. of Trs. of the S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of New York
   Mellon Corp.*,
   No. 09 Civ. 6273 (RMB) (AJP), 2010 WL 1558587 (S.D.N.Y. Apr. 14, 2010)
   *vacated*, 2010 WL 3958790 (S.D.N.Y. Sept. 7, 2010) ............................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................... passim

*Chao v. Merino*,
   452 F.3d 174 (2d Cir. 2006).......................................................................7

*Cent. States Se. & Sw. Areas Health and Welfare Fund*,
   433 F.3d 181 (2d Cir. 2005)......................................................................23

*Connecticut v. Physicians Health Servs. of CT, Inc.*,
   287 F.3d 110 (2d Cir. 2002)......................................................................19

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991)........................................................................27

*Cress v. Wilson*,
   No. 06-Civ. 2717, 2007 WL 1686687 (S.D.N.Y. June 6, 2007) ...........................21

i

### TABLE OF AUTHORITIES
### continued

**Page(s)**

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995)..................................................................................13

*Diagnosis Cardioline Monitoring of New York, Inc. v. Leavitt*,
171 F. App'x 374 (2d Cir. 2006) ............................................................17

*Fallick v. Nationwide Mut. Ins. Co.*,
162 F.3d 410 (6th Cir. 1998) ...................................................21, 22, 23

*Finkel v. Romanowicz*,
577 F.3d 79 (2d Cir. 2009)......................................................................27

*Fisher v. J.P. Morgan Chase & Co.*,
703 F. Supp. 2d 374 (S.D.N.Y. 2010)......................................................27

*Forbush v. J.C. Penney Co., Inc.*,
994 F.2d 1101 (5th Cir. 1993) ................................................................22

*Gerosa v. Savasta & Co., Inc.*,
329 F.3d 317 (2d Cir. 2003).....................................................................18

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002)..................................................................................18

*Gulf Winds Fed. Credit Union v. Firestone Bldg. Prods. Co.*,
No. 07cv468, 2008 WL 360623 (N.D. Fl. Feb. 8, 2008)..........................9

*Harborview Value Masterfund, L.P.  v. Freeline Sports, Inc.*,
No. 11 Civ 1638, 2012 WL 612358 (S.D.N.Y. Feb. 23, 2012) .................8

*Hastings v. Wilson*,
516 F.3d 1055 (8th Cir. 2008) .................................................................20

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ...................................................................27

*In re Citigroup ERISA Litig.*,
662 F.3d 128 (2d Cir. 2011)............................................................ passim

*In re ING Groep N.V. ERISA Litig.*,
749 F. Supp. 2d 1338 (N.D. Ga. 2010) ....................................................20

*In re Lehman Bros Secs. & ERISA Litig.*,
No. 08 Civ. 5598 (LAK), 2011 WL 4632885 (S.D.N.Y. Oct, 5, 2011) ....................10, 11, 12

## TABLE OF AUTHORITIES
### continued

**Page(s)**

*In re Lehman Bros. Secs. & ERISA Litig.*,
    683 F. Supp. 2d 294 (S.D.N.Y. 2010)...................................................................................9

*In re Reliant Energy ERISA Litig.*,
    336 F Supp. 2d 646 (S.D. Tex. 2004) ...............................................................................20

*In re SLM Corp. ERISA Litig.*,
    No. 08 Civ. 4884 (WHP), 2010 WL 3910566 (S.D.N.Y. Sept. 24, 2010) .................19, 20, 21

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ................................................................................................27

*Katsaros v. Cody*,
    744 F.2d 270 (2d Cir. 1984)...........................................................................................7, 8

*Lewis v. Casey*,
    518 U.S. 343 (1996) .......................................................................................................23

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)............................................................................................17

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985).......................................................................................................18

*Mertens v. Hewitt Assoc.*,
    508 U.S. 248 (1993).................................................................................................18, 23

*Mulder v. PCS Health Sys., Inc.*,

    216 F.R.D. 307 (D.N.J. 2003)........................................................................................21

*Nechis v. Oxford Health Plans, Inc.*,
    421 F.3d 96 (2d Cir. 2005).......................................................................................19, 22

*Pegram v. Herdrich*,
    530 U.S. 211 (2000).......................................................................................................15

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011)............................................................................................27

*Rosen v. Unilever U.S., Inc.*,
    No. C 09-2563, 2010 WL 4807100 (N.D. Cal. May 3, 2010) ...................................................9

*Simon v. Gen. Elec. Co.*,
    263 F.3d 176 (2d Cir. 2001).....................................................................................19, 22

**TABLE OF AUTHORITIES**
**continued**

**Page(s)**

*Space v. BRPM Towing Serv., Inc.*,
  No. 07-947, 2007 WL 4570157 (D.N.J. Dec. 21, 2007)............................................................9

*Sutton v. Med. Serv. Ass'n of Pa.*,
  No. Civ. A. 92-4787, 1993 WL 273429 (E.D. Pa. July 20, 1993)...........................................22

*Wolff v. Rare Medium, Inc.*,
  171 F. Supp. 2d 354 (S.D.N.Y. 2001).................................................................................6, 7

**STATUTES**

29 U.S.C. § 1002(7) ...................................................................................................................18

29 U.S.C. § 1002(16)(A).......................................................................................................13, 26

29 U.S.C. § 1002(21)(A).......................................................................................................14, 28

29 U.S.C. §§ 1021-1028 ...........................................................................................................13

29 U.S.C. § 1024(b)(4) ..............................................................................................................27

29 U.S.C. § 1104(a)(1)(B) ...........................................................................................................7

29 U.S.C. § 1106(a), (b)(1), (3) ...........................................................................................15, 16

29 U.S.C. § 1108(b)(8) ..............................................................................................................16

29 U.S.C. § 1132(a) ........................................................................................................18, 19, 23

**OTHER AUTHORITIES**

29 C.F.R. § 2510.3-101(h)(ii) ....................................................................................................15

H.R. Rep. No. 93-1280 (1974) (Conf. Rep.), *reprinted* in 1974 U.S.C.C.A.N. 5038 ............23, 24

Defendants submit this memorandum of law in support of their motion to dismiss the First Amended Complaint.

## I.   <u>INTRODUCTION</u>

This is Plaintiff Whitley's second attempt to state viable ERISA claims against Defendants[1] and it is no more successful than his first try.  Whitley first alleged that Defendants had predicted the coming financial crisis and reacted by "dumping" risky mortgage loans, which he called "Advanced Private Placement Commercial Mortgages," from their own books into the stable value fund that J.P. Morgan Investment Management ("JPMIM") managed for his employer's ERISA plan.  (Dkt. 1.)  In his Complaint, Whitley attributed this allegation to an unnamed "confidential witness."  Because this serious allegation was demonstrably untrue, Defendants moved for summary judgment based on an analysis of data showing all of the stable value fund's transactions during the putative class period.  (Dkt. 29.)  Defendants also challenged Whitley's standing to represent hundreds of unrelated plans.  (*Id.*)  Whitley responded by abandoning his "dumping" allegations and pleading an entirely new claim, asserted by five new Plaintiffs and, again, based in part on an unnamed "confidential witness."  (Dkt. 47.)

The First Amended Complaint is predicated on nothing more than the generic hindsight allegation that Defendants caused their funds to purchase too many "risky" mortgage loans before the global financial crisis and failed to disclose the true value of these assets to Plaintiffs and other plan participants.  Plaintiffs also complain of unspecified "prohibited transactions" involving the purchase of mortgages issued by the Defendants, despite disavowing the dumping allegations.  Plaintiffs do not nor could they complain that their investments lost value.  They argue only that the investments should have earned even *more* than they did.

---

[1] Defendants are J.P. Morgan Chase & Co., J.P. Morgan Chase Bank, N.A., J.P. Morgan Investment Management Inc., and J.P. Morgan Retirement Plan Services LLP (collectively "Defendants").  By submitting this motion, Defendants do not concede that they are properly named parties to this action.

Critically, Plaintiffs make no allegation that Defendants failed to use proper care and diligence in selecting investments *at the time they were made*.  Instead, their claims depend exclusively on an impermissible hindsight assessment of their stable value funds' alleged underperformance and on bare allegations that Defendants "knew or should have known" that the investments were too "risky."  These averments simply do not meet the Second Circuit's pleading standards following the Supreme Court's *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* decisions.

Plaintiffs' contention that Defendants breached their alleged fiduciary duties by failing to disclose information related to the market value of the portfolios underlying their stable value funds also lacks any legal support.  (Dkt. 47 ¶ 118 (Count III).)  Nothing in ERISA requires a fiduciary to disclose such information, and the Second Circuit has repeatedly refused to infer such a duty in the face of ERISA's comprehensive disclosure regime.  Plaintiffs' allegations, therefore, fail to state a claim on which relief may be granted.

Plaintiffs' contention that Defendants engaged in prohibited transactions by causing "the JPM Stable Value Funds to purchase and hold private placement mortgages that they themselves originated," and to participate in self-dealing transactions[2] conflicts directly with Plaintiffs' stipulation that the "First Amended Complaint does not contain any allegation that the challenged investments were held on Defendants' or their affiliates' balance sheets before being acquired by the stable value funds."  (Dkt. 46.)  Plaintiffs' prohibited transaction allegations cannot survive this conflict; leaving the First Amended Complaint with no allegations at all – much less allegations sufficient to satisfy *Twombly* and *Iqbal* – supporting their prohibited transaction counts.

---

[2] Dkt. 47 ¶¶ 125, 131 (Counts IV and V).)

As detailed in Section III below, therefore, the Court should dismiss the First Amended Complaint its entirety pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted.

In the alternative, as described in Section IV, the Court should dismiss significant portions of the First Amended Complaint.  First, the Court should dismiss all claims Plaintiffs purport to bring on behalf of plans in which they did not participate.  ERISA authorizes suits only by participants with respect to the plans in which they participate.  Thus, Plaintiffs lack statutory standing to bring claims on behalf of unrelated plans in which they have no interest and do not participate.  Second, the Court should dismiss Plaintiffs Koch and Duran's claims arising before September 10, 2009, because they are barred by a prior class settlement of similar claims.  And, third, the Court should dismiss all claims against Defendants J.P. Morgan Chase & Co. ("JPMC") and J.P. Morgan Retirement Plan Services LLC ("RPS") because the First Amended Complaint fails to adequately plead that they had relevant fiduciary status.

## II.   **FACTUAL BACKGROUND**

1.   The Parties

Plaintiffs allege they are participants in ERISA 401(k) plans maintained by Hospira, Caterpillar, Mitsubishi, and Titan (collectively, the "Plans").  (Dkt. 47 ¶ 35.)  These Plans are defined contribution plans that allow participants to direct the investments in their individual accounts among a variety of investments offered on the plans' investment "menus."  (*Id.* ¶ 34.)  Each plan's investment "menu" was selected by the plan's fiduciaries (not Defendants).

Defendants JPMIM and J.P. Morgan Bank, N.A. ("JPMC Bank") manage stable value separate accounts and a pooled stable value collective fund, respectively, that are included on the

investment menus offered by Plaintiffs' ERISA plans.[3]  JPMIM manages separate account stable

value funds for the Plans sponsored by Hospira (the "Hospira Fund"), Caterpillar (the

"Caterpillar Fund"), and Mitsubishi (the "Mitsubishi Fund").  *See* Hill Declaration Exs. A, B, C;

(Dkt. 47 ¶ 35).  In managing these funds, JPMIM agreed to follow written guidelines set forth in

the agreements providing that the fund may be invested in any collective investment fund for

which JPMC Bank is a trustee.  (*Id.*)  The guidelines further provide that "Directly placed

mortgage loans" would not constitute more than 25% of the fund.  (*Id.*)  JPMIM is an ERISA

fiduciary with respect to the management of these accounts.

     In addition to the separate account management services JPMIM provides, JPMC Bank

maintains a bank collective investment fund, which is managed as a stable value fund, called the

Stable Asset Income Fund ("SAIF").  *See* Hill Declaration Ex. D.  The Titan Plan offers SAIF as

an investment option to its participants, who may direct the Titan Plan to purchase units in the

fund.  (Dkt. 47 ¶¶ 23-24, 35.)  These funds – Hospira, Mitsubishi, Caterpillar, and SAIF

(collectively referred to herein as the "Stable Value Funds") – were invested in bank collective

funds maintained by JPMC Bank (such as the Intermediate Bond Fund) which Plaintiffs call

"Pension Trust Funds."  (Dkt. 47 ¶¶ 6-7.)

     Plaintiffs allege that they chose to invest in one of the Stable Value Funds during the

putative class period of July 1, 2007 to December 31, 2010 (the "Class Period").  (Dkt. 47 ¶¶ 19-

24, 93.)

                    2.      Stable Value Fund Background Information

     Understanding the unique nature of stable value funds is important to understanding the

claims in this case.  Stable value funds are designed to preserve investors' capital while

---

[3] Only certain tax qualified ERISA or governmental plans are permitted to invest in these strategies.  Individual investors are not able to invest in these funds outside of their retirement plans.

4

providing steady, positive returns.  Although they can be structured in a variety of ways, stable

value funds generally consist of a portfolio of fixed income investments that are protected from

interest rate volatility through one or more "wrap" contracts issued by a financial institution such

as a bank or insurance company.  These wrap contracts guarantee investors the ability to buy and

sell at book (sometimes also called contract) value rather than market value.  *See generally*

*http://stablevalue.org/help-desk/faq/* (last visited October 16, 2012); (*see also* Dkt 47 ¶ 43).  The

Stable Value Industry Association describes the protections such wrap contracts provide as

follows:

> The market value of all fixed income investments, including the underlying assets
> in a stable value fund, is volatile by nature. That is, the market value of the assets
> moves inversely with interest rate changes. As interest rates move up, the market
> value of the assets declines, and vice-versa. This volatility is not unusual.
>
> Unlike other 401(k) investments, however, all stable value funds have protection
> against interest rate swings via the protections in insurance company and bank
> contracts. *This means that investors in a stable value fund are able to transact
> (make deposits, withdraws, transfers) at book or contract value, which is
> principal plus accrued interest. If the market value of the stable value fund's
> underlying assets is insufficient to honor benefits for covered withdrawals at book
> value, then the contractual protections kick in to ensure that participants continue
> to transact at contract value.* Contract value, or book value, is the value of all the
> assets supporting the stable value fund plus the contractual protection against
> interest rate volatility.

*Id.* (emphasis added).  Thus, stable value fund investors are guaranteed (1) the ability to transact

at book value – that is, their principal plus accumulated interest (their account balance or book

value) is always guaranteed, and (2) a positive, relatively stable "interest crediting rate."

Critically for this case, the market value of the underlying portfolio *does not affect* the book

value at which all of a participant's transactions are made.  Consequently, a participant's account

balance is expressed as the book value of his account – *i.e.* the value that is guaranteed – rather

than the market value of the underlying portfolio.

The Stable Value Funds here entered into one or more "wrap" contracts to guarantee participants the ability to transact at book value as described above. *See, e.g.,* Hill Declaration Ex. E; (*see also, e.g.,* Dkt. 47 ¶ 76 (acknowledging existence of wrap contracts)).  As a result, there is no allegation that any Plaintiff has lost a single dollar of their principal and accumulated interest.  Plaintiffs' only complaint, therefore, is that they should have received even *greater* returns than they did during the worst market downturn since the Great Depression.

## III.   THE COURT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY

### A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must plead sufficient "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the mere "possibility" that defendant acted unlawfully is not enough.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotations omitted).  Although pleading requirements are construed liberally, "[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader.  If it fails to do so, a motion under Rule 12(b)(6) will be granted."  *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001).

### B.   Counts I and II Fail To Plead Facts Sufficient To State A Plausible Claim

Plaintiffs allege in Counts I and II that Defendants breached their ERISA fiduciary duties by imprudently investing the Stable Value Funds in "overly risky" mortgage loans to attract new customers to increase their stable value market share.  (Dkt. 47 ¶¶ 102-114.)  As Plaintiffs

acknowledged, to state a breach of the duty of prudence, a plaintiff must allege facts sufficient to demonstrate that the defendant failed to give "appropriate consideration" to the relevant "facts and circumstances" before making an investment.  (*See, e.g., id.* ¶ 105.)  Nonetheless, Plaintiffs have failed to offer *any* allegations that Defendants failed to perform adequate diligence before investing the Stable Value Funds' assets.  Thus, Plaintiffs' allegations are insufficient to state prudence claims under *Twombly* and *Iqbal* standards.

ERISA requires a fiduciary to discharge his duties with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  In the case of a challenge to the prudence of a plan's investment, the court's task is to consider whether the fiduciaries "at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and structure of the investment."  *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984); (*accord* Dkt. 47 ¶ 105).  A fiduciary's conduct must be judged "based upon the information available to the fiduciary at the time of each investment decision and not 'from the vantage point of hindsight.'"  *In re Citigroup ERISA Litig.*, 662 F.3d 128, 140 (2d Cir. 2011), *citing* 29 U.S.C. § 1104(a)(1)(B); *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006).

Here, Plaintiffs make no allegation that Defendants failed to adequately investigate the Plans' investments, much less that an investigation of the information available at the time would have led to the conclusion that the investments were not prudent.  (*See generally* Dkt. 47.)  At best, Plaintiffs allege that the investments were too risky because they allegedly underperformed during the Class Period.  (*See, e.g., id.* ¶ 74.)  Such allegations are insufficient to state a prudence

claim and Counts I and II[4] should be dismissed for this reason alone.  *In re Citigroup*, 662 F.3d at 141 (plaintiff must allege "facts that, if proven, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was imprudent." (internal quotation omitted)); *Katsaros*, 744 F.2d at 279 (investments cannot be judged with hindsight).

Plaintiffs may contend that their conclusory allegation that Defendants "knew" the investments were imprudent relieves them of their obligation to plead a failure to investigate. But Plaintiffs' assertion that Defendants knew these were bad investments is both conclusory and nonsensical.  Indeed, Plaintiffs' theory depends on the following mutually exclusive allegations: (1) Defendants invested in the allegedly risky mortgage loans in order to enhance their stable value funds' performance and attract new investors thereby maximizing their fee revenue; and (2) beginning in 2006, Defendants saw the looming crash in the real estate markets and began selling residential mortgages and securities held in their own accounts, establishing their knowledge that the retention of the private commercial mortgages in the Stable Value Funds was "imprudent."  These allegations cannot be taken as true.  If Defendants really knew that the private mortgages held by the Stable Value Funds were risky and were about to collapse in value, they would have sold them because holding the mortgage loans would defeat the alleged goal of maximizing returns to attract investors.  The Court is not required to treat contradictory and illogical – *i.e.*, implausible – allegations as true for the purposes of Rule 12.  *See Harborview Value Masterfund v. Freeline Sports, Inc.*, No. 11 Civ 1638, 2012 WL 612358 at *13 (S.D.N.Y.

---

[4]  Count II is entirely dependent on the allegation that the investments were imprudent.  It avers that that the allegedly risky investments "were not in the best interest" of participants because "JPM sought to inflate the yields…while at the same time disguising the corresponding risks with the goal of increasing its market share…." (Dkt. 47 ¶ 113.)  If Count I fails because of a failure to plead an inadequate investigation, Count II must be dismissed as well.

Feb. 23, 2012) (dismissing breach of fiduciary duty claim because alleged scheme was illogical and thus implausible).[5]

Furthermore, even assuming the knowledge allegations were not fatally contradictory, Plaintiffs have failed to allege facts sufficient to establish that Defendants knew or should have known the Plans' investments were imprudent.[6]

In substance, Plaintiffs make three kinds of allegations to support the contention that Defendants knew or should have known that the specific investments made in the Stable Value Funds were overly risky. They are all insufficient.

**First**, Plaintiffs allege that Defendants should have known the private mortgage loans were too risky because they originated them. (Dkt. 47 ¶¶ 2, 15, 70.) In other words, Plaintiffs ask the Court to infer knowledge from the positions Defendants held. This Court, however, has repeatedly held that similar allegations are not sufficient to establish knowledge that a particular investment was too risky. In *Operating Eng'rs Pension Trust*, this Court ruled that allegations that J.P. Morgan must have known of the risks of investing in Lehman securities because it was Lehman's clearing bank were insufficient. 2012 WL 1382274 at *4. Similarly, in a lawsuit against the alleged fiduciaries of Lehman's 401(k) plan, this Court rejected as insufficient a variety of allegations that the defendants should have known of the riskiness of investments in

---

[5]  *See also Rosen v. Unilever U.S., Inc.*, No. C 09-2563, 2010 WL 4807100 at *6 (N.D. Cal. May 3, 2010) (dismissing complaint because "the illogical relationships Plaintiff draws…renders Plaintiff's complaint implausible on its face."); *Gulf Winds Fed. Credit Union v. Firestone Bldg. Prods. Co.*, No. 07cv468, 2008 WL 360623 at *5 (N.D. Fl. Feb. 8, 2008) (dismissing complaint where alleged motive for scheme was illogical); *Space v. BRPM Towing Serv., Inc.*, No. 07-947, 2007 WL 4570157 at *6 (D.N.J. Dec. 21, 2007) (dismissing complaint were plaintiff's allegations were contradictory).

[6]  A plaintiff must do more than baldly assert, without any supporting allegations, that the fiduciaries knew about the risk of an investment when they made their decision. *In re Citigroup*, 662 F.3d at 141.  "If a plaintiff alleges, in conclusory terms only, that there were clear warnings signs of a collapse and that defendants knew or should have known about [the] true financial state of the a company in which a plan's assets were invested, then the plaintiff has not met its burden under Rule 8(a)."  *Bd. of Trs. of the Operating Eng'rs Pension Trust v. J.P. Morgan Chase Bank, N.A.*, No. 09 Civ. 9333, 2012 WL 1382274, at *3 (S.D.N.Y. Apr. 20, 2012) (internal quotations omitted), *citing In re Lehman Bros. Secs. & ERISA Litig.*, 683 F. Supp. 2d 294, 302 (S.D.N.Y. 2010) (*Lehman I*).

Lehman's stock based on the high level positions they held within the company.  *In re Lehman Bros Secs. & ERISA Litig.*, No. 08 Civ. 5598 (LAK), 2011 WL 4632885, at *3-*4 (S.D.N.Y. Oct, 5, 2011) (*Lehman II*).[7]

Plaintiffs' allegations fail here too.  Simply alleging Defendants originated the mortgage loans does not establish that they should have known the loans were "too risky."  Indeed, this bare allegation provides not a shred of information from which the Court could infer that the originator possessed information from which it should have concluded that the loans were too risky at the time they were made.

**Second**, Plaintiffs rely on a Fortune magazine story for the proposition that the managers of the Stable Value Funds should have known that certain unidentified mortgage investments were too risky.  (Dkt. 47 ¶¶ 12-14, 72-73.)  More specifically, Plaintiffs allege that Defendants must have known that the Stable Value Funds' investments were too risky because J.P. Morgan allegedly sold $12 billion of subprime residential mortgages it held on its own books in 2006. *Id.*  Plaintiffs' factual allegations, however, cannot support the massive weight of inference heaped upon them.

There is absolutely nothing to connect the Fortune story with *any* investment actually held by the Stable Value Funds.  The Fortune story purports to chronicle generalized views of subprime *residential* mortgages or *residential* mortgage backed securities in October 2006.  It also includes a reference to Chase's *residential* mortgage business allegedly selling $12 billion worth of subprime mortgages it had originated.  Whitley's original Complaint made the baseless allegation that these mortgages were somehow "dumped" into the Stable Value Funds, but he

---

[7]  *See also Bd. of Trs. of the S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of New York Mellon Corp.*, No. 09 Civ. 6273 (RMB) (AJP), 2010 WL 1558587, at *4 (S.D.N.Y. Apr. 14, 2010) (allegation that defendant should have known of risks as "a sophisticated investor acting in a fiduciary capacity...to preserve principal" was not sufficient) *vacated*, 2010 WL 3958790 (S.D.N.Y. Sept. 7, 2010) (granting plaintiffs leave to file an amended complaint).

was forced to withdraw the allegation in light of the evidence.  (Dkt. 46.)  The First Amended

Complaint retains the reference to the Fortune article, but makes no attempt to explain what

relevance it has to the private commercial mortgage loans that are the subject of Plaintiffs'

claims.  This failure is telling.  Defendants produced to Plaintiffs data showing all of the Stable

Value Funds' holdings at the start of and transactions within the Class Period.  Plaintiffs have

failed entirely to allege facts demonstrating a plausible connection between the Fortune story and

the alleged deficiencies in the Stable Value Funds.

> As a result, Plaintiffs are left with nothing more than the argument that Defendants

should have known that the Stable Value Funds' particular commercial mortgage investments

were "too risky" because they were supposedly aware of potential trouble in the residential

subprime mortgage market.  But the Second Circuit and this Court have both rejected similar

arguments.  *In re Citigroup*, 662 F.3d at 140 (allegations that fiduciaries became "aware of the

impending collapse of the subprime market" insufficient to establish they should have known of

risks to company's stock); *Lehman II*, 2011 WL 4632885 at *4 (presentation warning of

"industry wide risks" insufficient to put fiduciaries on notice of risks to company's stock).  For

the same reasons, Plaintiffs' allegations based on the Fortune story fail here.

> **Third**, Plaintiffs allege that the Confidential Witness ("CW") told Defendants that the

investments were "too risky."  (Dkt. 47 ¶¶ 80, 81.)  This allegation too fails to establish that

Defendants knew or should have known the investments were imprudent.  Plaintiffs have not

identified the CW, disclosed what information he supposedly provided, when he allegedly

provided it, or identified any particular Defendant to whom he provided the information.

Perhaps most importantly, Plaintiffs have alleged no facts that would establish the CW's

credibility, much less his relevant expertise.[8]  Without such foundational allegations, there is no

factual averment sufficient to establish that the information *should* have put Defendants on

notice.  *See In re Citigroup*, 662 F.3d at 141 ("even if we assume that an investigation would

have revealed all of the facts that plaintiffs have alleged, the [defendant] would not have been

compelled to conclude that Citigroup was in a dire situation."); *Lehman II*, 2011 WL 4632885 at

\*5 (allegation that defendant was aware of the complaint insufficient because it was allegations,

not evidence, and therefore "incapable of conveying any real information that Lehman was in a

dire – or any other – situation.").

Likewise, even assuming the CW actually provided Defendants with relevant credible

information – a dubious assumption – there is no allegation that Defendants failed properly to

evaluate that information.  Alleging a breach of prudence requires alleging a failure to employ

due diligence before making an investment decision.  *See* discussion at p.7 *supra*.  Thus, the

allegation that the CW told the Defendants something (undisclosed) about the funds cannot alone

state a claim for breach of the duty of prudence.  Such an allegation is completely consistent with

lawful behavior – Defendants could have investigated appropriately and concluded that the

information did not change their view of the prudence of the challenged investments.  *See*

*Operating Eng'rs*, 2012 WL 1382274 at \*4 (allegation of knowledge failed because it "does not

allege sufficient facts about the investment decision making process or the factors that must have

been considered to properly assess whether liquidating the Notes would have been prudent at the

time.").

Thus, the Court should dismiss Counts I and II because they do not adequately allege a

failure to properly investigate the challenged investments, are predicated on mutually exclusive

---

[8] Indeed, in view of the erroneous "dumping" allegations the CW made in the first Complaint, there is no reason for
the Court to take the allegations as true, even if the Amended Complaint had pled an adequate foundation.

allegations, and fail to sufficiently allege that Defendants knew or should have known the investments were overly risky.

> **C.    The Court Should Dismiss Count III Because Defendants Had No Duty To Disclose Investment Information Under ERISA**

In Count III, Plaintiffs allege Defendants violated ERISA's duty of loyalty by "failing to disclose and inform [Plaintiffs] of complete and accurate information" relating to the market value of the portfolios underlying the Stable Value Funds.  (Dkt. 47 ¶ 118).  Even assuming Defendants were fiduciaries with respect to participant communications, this allegation fails to state a claim because ERISA imposes no duty to disclose such information.

ERISA contains detailed disclosure provisions. 29 U.S.C. §§ 1021-1028.  Not one of them requires Defendants to provide the supposedly omitted investment information to participants.[9]  *Id.*  For this reason, the Second Circuit has declined to extend ERISA's disclosure obligations beyond those expressly set forth in the statute, except in limited circumstances.  *In re Citigroup*, 662 F.3d at 142-43 (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995)).  In fact, distinguishing those limited circumstances, the Second Circuit explained that it would not "create a duty to provide participants with nonpublic information pertaining to specific investment options."  *In re Citigroup*, 662 F.3d at 143; *see also Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 146-47 (2d Cir. 1997) (it is "inappropriate to infer an unlimited disclosure obligation [under ERISA] on the basis of general provisions that say nothing about disclosure").

---

[9]  Moreover, ERISA's disclosure requirements essentially all fall on "administrators," as defined in 29 U.S.C. § 1002(16)(A), and none of the Defendants is an "administrator" of the Plaintiffs' plans.

Since Plaintiffs' failure-to-disclose theory is premised on the existence of a duty to disclose "information pertaining to specific investment options," namely information related to the market value of the underlying portfolios, these controlling precedents are fatal to their claim.

Plaintiffs' theories are also nonsensical.  They contend that their "account balance" information "did not accurately reflect the market value" of the underlying portfolios.  (Dkt. 47 ¶ 118(a).)  Plaintiffs also allege that "the book value of the Stable Value Funds was far above the market value…causing participants to pay far above the market value."  (*Id.*)  Stable value funds are structured to allow plan participants to enter and exit the funds at a book value that is different than the underlying market value of the portfolio.  *See* discussion in Section II *supra*.[10] As a result, they *never* buy or sell at market value except in the rare and absolutely coincidental circumstances that market and book value happen to be equal.  Thus, the purchase or sale of interests in stable value funds when the book value is less than the market value cannot result in harm to a plan participant and Plaintiffs have failed to state a claim under Count III.

Finally, Plaintiffs fail to allege facts sufficient to establish that any Defendant had a fiduciary duty with respect to communications to plan participants.  Under ERISA, fiduciary status is not an all or nothing concept.  A person is a fiduciary with respect to a plan only "to the extent that" he:  (1) exercises discretionary authority or control respecting plan management or plan assets, (2) renders investment advice for a fee, or (3) has discretionary authority or responsibility for plan administration.  29 U.S.C. § 1002(21)(A); *In re Citigroup*, 662 F.3d at 135.  As a result, "a person may be an ERISA fiduciary with respect to certain matters but not others."  *Id.*  Therefore, "in suits alleging breach of fiduciary duty, the 'threshold question' is

---

[10] Because the book value is guaranteed by the wrap contracts, the book value is the amount a participant is entitled to receive upon withdrawal of his investment in the Stable Value Funds. Accordingly, that is the only value relevant to plan participants and there is no allegation that Defendants failed to disclose the book value to plan participants.

whether the defendants were acting as fiduciaries 'when taking the action subject to complaint.'"
*Id.*

Plaintiffs fail to allege *any* facts sufficient to establish that any Defendant had discretionary authority over plan management or administration – *i.e.*, over communications to participants.  The fact that JPMIM and JPMC Bank had limited fiduciary roles with respect to managing the Stable Value Funds' assets does not make them fiduciaries with respect to participant communications.  *E.g. Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  Indeed, the Second Circuit recently explained that "only the plan administrator is responsible for meeting ERISA's disclosure requirements and therefore for communicating with Plan participants."  *In re Citigroup*, 662 F.3d at 144.  Thus, even assuming ERISA supported their alleged duty to disclose theory, Plaintiffs' Count III must be dismissed because Plaintiffs have failed to allege Defendants had any fiduciary duty at all with respect to participant communications.

### D.    The Court Should Dismiss Plaintiffs' Prohibited Transaction Claims In Counts IV and V For Failure To State A Claim

Plaintiffs allege in Counts IV and V that Defendants engaged in "prohibited transactions" involving the assets of the Plans.  (Dkt. 47 ¶¶ 125-126, 131-132.)  As set forth below, Plaintiffs have failed to allege the essential elements of their purported prohibited transaction claims.

In Count IV, Plaintiffs contend that Defendants violated 29 U.S.C. § 1106(a).  That section prohibits only transactions between a "plan" and a "party in interest."  29 U.S.C. § 1106(a).  The Stable Value Funds invest the Plans' assets in collective investment funds managed by JPMC Bank.  These collective investment funds are deemed to hold Plan assets.  *See* 29 C.F.R. § 2510.3-101(h)(ii) (plan's investments in collective trust are considered plan assets).  Accordingly, transactions between the collective investment funds and a "party in interest" would be prohibited under Section 1106(a) absent an exemption.  29 U.S.C. § 1106(a).

15

Plaintiffs' sole attempt to allege a transaction with a "party in interest," appears in paragraph 125:  "The JPM entities while fiduciaries and parties in interest, caused the JPM Stable Value Funds to purchase and hold private placement mortgages that they themselves originated."  However, this allegation cannot support an alleged transaction between the Plans and Defendants because Plaintiffs have stipulated that they are *not* alleging that the funds acquired any mortgage loans from Defendants.  (Dkt. 46.)  Plaintiffs' Section 1106(a) claim, therefore, fails because they have not alleged (and cannot in light of their stipulation allege) a transaction with a "party in interest" involving the assets of any Plan.

Plaintiffs' Section 1106(b) claim in Count V fails for the same reason.  That section prohibits a "fiduciary" from dealing with the plan's assets "in his own interest or for his own account," or receiving consideration "for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."  29 U.S.C. § 1106(b)(1), (3).[11]  Plaintiffs' only allegation purporting to support a violation of section 1106(b) is set forth in Paragraph 131:  "JPM used the plans' assets to enter into private placement mortgage transactions involving JPM's own interests or accounts, *i.e.* mortgages that were originated, underwritten, and/or brokered by JPM."  (Dkt. 47 ¶ 131.)

Once again, this single allegation fails to state a prohibited transaction claim in light of Plaintiffs' stipulation.  That agreement conclusively establishes that Paragraph 131 does not include the "dumping" allegations that were the basis of Plaintiffs' prohibited transaction theories in the Complaint.  *Compare* Dkt. 47 ¶ 131 *with* Dkt. 1 ¶ 115.  The remainder of the First Amended Complaint is devoid of any factual allegations that would support an inference that any Defendant dealt with Plan assets "for its own interests or accounts."

---

[11]  The Plans' investments in the collective investment funds, and their subsequent investment in mortgage loans, do not violate Section 1106(b).  *See, e.g.*, 29 USC §1108(b)(8) (exempting investments in bank collective investment funds).

The Court should dismiss Counts IV and V because Plaintiffs have failed to allege the necessary elements of their prohibited transaction claims.

## IV.   ALTERNATIVELY, THE COURT SHOULD DISMISS IN PART THE FIRST AMENDED COMPLAINT FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM

Because the First Amended Complaint fails to state a claim and should be dismissed in its entirety, the Court's analysis properly could end here.  In the event the Court does not dismiss the First Amended Complaint entirely, however, it should nonetheless (1) dismiss all claims on behalf of plans in which Plaintiffs did not participate because they lack statutory standing to bring such claims, (2) dismiss Plaintiffs Koch and Duran's claims arising before September 10, 2009 as barred by a prior class settlement agreement, and (3) dismiss all claims against JPMC and RPS because the First Amended Complaint fails to adequately plead fiduciary status.

### A.   The Court Should Dismiss Plaintiffs' Claim On Behalf of Plans in Which They Did Not Participate Because They Lack Statutory Standing

Plaintiffs purport to bring claims on behalf of every plan that utilized JPMIM to manage its separate account stable value fund or participated in JPMC Bank's SAIF.  ERISA, however, does not authorize such sweeping suits.  ERISA authorizes participants to bring suits challenging only the administration of the plans in which they participate.  The Court, therefore, should dismiss Plaintiffs' claims purportedly brought on behalf of any plan other than the plans in which they participate ("Other Plans") pursuant to Rule 12(b)(1).

1.    Standard for Dismissal

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  On a 12(b)(1) motion, the plaintiff bears the burden of proof with respect to jurisdiction.  *See Diagnosis Cardioline Monitoring of New York,*

*Inc. v. Leavitt*, 171 F. App'x 374, 375 (2d Cir. 2006).  In considering a Rule 12(b)(1) motion

challenging a plaintiff's standing, courts may look beyond the allegations of the complaint and

consider matters presented in affidavits or an evidentiary hearing without converting the motion

into a motion for summary judgment under Rule 56.  *Alliance for Envtl. Renewal, Inc. v.*

*Pyramid Crossgates Co.*, 436 F.3d 82, 87-88 (2d Cir. 2006).

> 2.   Plaintiffs Lack Statutory Standing To Sue On Behalf Of Plans In Which
>       They Did Not Participate

As the Supreme Court has repeatedly stated, ERISA is a complex, reticulated statute with

carefully crafted civil enforcement provisions.  *Great-West Life & Annuity Ins. Co. v. Knudson*,

534 U.S. 204, 209 (2002), citing *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 251 (1993) and *Mass.*

*Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985); *see also Gerosa v. Savasta & Co., Inc.*,

329 F.3d 317, 322 (2d Cir. 2003) (because ERISA's express remedies are the product of long

and careful compromise, they should remain exclusive, leaving little room for "judicially-created

interstitial remedies").  Furthermore, ERISA resulted from numerous compromises, not all of

which favored potential plaintiffs.  *Mertens*, 508 U.S. at 262.  As such, courts should not create

or infer causes of action beyond those Congress expressly adopted.  *Russell*, 473 U.S. at 147;

*Mertens*, 508 U.S. at 254.  ERISA simply does not authorize suits by participants to remedy

alleged breaches of duties owed to other plans in which they do not participate.

In relevant part, ERISA's civil enforcement provision authorizes suits only by a

"participant."  29 U.S.C. § 1132(a).[12]  ERISA in turn defines a "participant" by reference to his

or her eligibility for benefits from a *particular plan* sponsored by a *particular employer*.  29

U.S.C. § 1002(7) (defining participant as "an employee or former employee of an

employer…who is or may become eligible to receive a benefit…from an employee benefit plan

---

[12]  It is undisputed that Plaintiffs are not fiduciaries or the Secretary of Labor.

*which covers employees of such employer*" (emphasis added)).  Read together, these provisions quite logically establish that an individual may bring suit under section 1132(a) only with respect to the plans from which he is or may become eligible to receive benefits – *i.e.*, those in which he participates.  And, quite logically, nothing in the statute authorizes a participant to bring suits related to plans from which he cannot receive benefits and as to which he has no legitimate interest.

Not surprisingly, given these clear statutory limitations, the Second Circuit has held that a plaintiff lacks standing to challenge decisions affecting ERISA plans in which he does not participate.  *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 101 (2d Cir. 2005) (plaintiff must be a participant to have standing under ERISA); *Connecticut v. Physicians Health Servs. of CT, Inc.*, 287 F.3d 110, 112, 120-21 (2d Cir. 2002) ("[b]ecause Congress 'carefully drafted' § 1132, parties other than those explicitly named therein – plan participants, beneficiaries, and fiduciaries – may not bring suit."); *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 177 (2d Cir. 2001) (plaintiff who "is neither a participant nor beneficiary of the plan under which his benefit claim arises…cannot bring suit under [ERISA § 1132]").

Nor does it matter that Plaintiffs are participants in their Plans; this fact does not somehow enable them to sue on behalf of Other Plans.  Allowing such suits would make little sense given the fact that unrelated plans have their own participants and fiduciaries who are armed by ERISA to sue if the factual circumstances of their plans warrant it.  Indeed, Plaintiff Whitley implicitly acknowledged this point by amending his Complaint to add five additional plaintiffs who participate in three different retirement plans.

Judge Pauley recently rejected a similar attempt by plaintiffs to represent participants in a plan in which they did not participate.  *See In re SLM Corp. ERISA Litig.*, No. 08 Civ. 4884

(WHP), 2010 WL 3910566, at *12 (S.D.N.Y. Sept. 24, 2010).  In that case, the plaintiffs

participated in the Sallie Mae 401(k) Savings Plan (the "Savings Plan"), but not the Sallie Mae

401(k) Retirement Savings Plan (the "Retirement Plan").  Nonetheless, they attempted to bring

class action ERISA claims on behalf of both the Savings Plan and the Retirement Plan.  *Id*. at *1.

The defendants moved to dismiss the claims purportedly brought on behalf of the Retirement

Plan, arguing that the plaintiffs lacked statutory standing because they were not "participants" in

that plan.  The Southern District agreed, ruling that the plaintiffs lacked statutory standing to sue

on behalf of the Retirement Plan, even though it was clear they were participants in the Savings

Plan and even though the Retirement Plan was sponsored by the same employer.  *Id.* at *12.  The

same analysis dooms Plaintiffs' claims on behalf of Other Plans here.  *Id.*

  Other courts too have rejected attempts by class action plaintiffs to bring claims on behalf

of plans in which they do not participate.  *See, e.g., Hastings v. Wilson*, 516 F.3d 1055, 1061 (8th

Cir. 2008) (plaintiffs lacked statutory standing to assert ERISA fiduciary breach claims on behalf

of pension plan of which they were neither participants nor beneficiaries and cannot use the class

action vehicle to confer standing); *In re ING Groep N.V. ERISA Litig.*, 749 F. Supp. 2d 1338,

1345-46 (N.D. Ga. 2010) (class action plaintiffs, participants in an ERISA 401(k) plan, lacked

both statutory and constitutional standing to assert claims on behalf of a second ERISA 401(k)

plan in which they were not participants and for which they could not establish an injury in fact);

*In re Reliant Energy ERISA Litig.*, 336 F Supp. 2d 646, 653-54 (S.D. Tex. 2004) (class plaintiff

lacks standing to bring claims on behalf of plans of which he was never a participant,

beneficiary, or fiduciary).[13]

---

[13] *See also Acosta v. Pac. Enters.*, 950 F.2d 611 (9th Cir. 1991) (participant in one of various plans administered on behalf of a single company lacks standing to challenge decisions affecting ERISA plans in which he does not participate).

Defendants note that this Court addressed this issue in *Cress v. Wilson*, No. 06-Civ. 2717, 2007 WL 1686687 (S.D.N.Y. June 6, 2007) (Koeltl J.), and concluded, based on Sixth Circuit precedent, that a participant's ability to sue on behalf of ERISA plans in which he does not participate is limited only by Rule 23. *Cress*, which was decided before *In re SLM*, is distinguishable and, respectfully, the out of circuit precedent on which it relied was mistakenly decided, an issue that was not fully briefed or argued before this Court.

In *Cress*, the plaintiffs sought to represent three ERISA plans but had participated in only two. The defendants argued plaintiffs lacked statutory standing to represent the third plan because they were not participants in that plan. The plaintiffs responded arguing that they could represent the third plan because "the assets of the Plans are held in a single, commingled unitary trust" and because they could satisfy the Rule 23 class action standards, citing *Mulder v. PCS Health Sys., Inc.*, 216 F.R.D. 307 (D.N.J. 2003) and *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998). *Cress*, 2007 WL 1686687 at *10. The defendants failed to respond to this argument, (06-cv-2717, Dkt. 24), leading this Court to note that the plaintiff's argument had not been rebutted and ultimately to allow their claims on behalf of the third plan to proceed. *Id.*

At the outset, *Cress* is readily distinguishable. In *Cress*, the plaintiffs sought to represent just three plans, all of which were sponsored by a single company, Northwest Airlines. By contrast, Plaintiffs seek to represent hundreds of ERISA plans sponsored by hundreds of unrelated companies across the nation. Plaintiffs have no connection at all to these plans and plan sponsors. In *Cress*, Northwest made many of the relevant fiduciary decisions for all three plans. *Cress*, 2007 WL 1686687 at *2 ("During the class period, the Plans and their assets were managed by committees selected and monitored by Northwest's Board of Directors…"). In this case, each of the hundreds of plans Plaintiffs purport to represent will have its own fiduciaries

21

who independently manage their plans and make independent fiduciary decisions regarding their plans and their stable value funds.  None of those fiduciaries, of course, have any connection to Plaintiffs' plans.  Nothing in the statute imbues every participant in an ERISA plan with the roving power to police supposed wrongs against every other ERISA plan in the nation simply because they happen to share a service provider.

In addition, the *Fallick* argument will not go unrebutted here.  Rule 23 does not create statutory standing where none otherwise exists.  In *Fallick*, the Sixth Circuit recognized that, in an individual suit, a plaintiff may only sue for breaches related to the plan in which he participates.  162 F.3d at 422 n.9.  Nonetheless, the Sixth Circuit went on to state that, in a class action, "the standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the challenged conduct, regardless of the representative's lack of participation in all the ERISA governed plans involved."  *Id.* at 423.[14]  This *dictum* has it exactly backwards.

It is axiomatic that Rule 23 cannot expand statutory rights.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge, or modify any substantive right.'"); *see also* Fed. R. Civ. P. 82 ("These rules do not extend…the jurisdiction of the district courts.").

---

[14]  The Sixth Circuit relied for this proposition on *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101 (5th Cir. 1993), and *Sutton v. Med. Serv. Ass'n of Pa.*, No. Civ. A. 92-4787, 1993 WL 273429, at *5 (E.D. Pa. July 20, 1993). Neither decision adds anything to the analysis.  Neither *Forbush* nor *Sutton* cited, let alone addressed, *Nechis*, *Physicians Health Servs.*, or *Simon*, the key Second Circuit decisions on ERISA standing.  Furthermore, *Forbush* was not even a standing case and made no attempt to analyze the interplay between ERISA's statutory standing requirements and Rule 23.  Likewise, *Sutton* also failed to consider the interplay between Rule 23 and statutory standing, reasoning that the named plaintiff could represent the class because the action would not "expand" the remedies available under ERISA.

Thus, whether a claim is brought individually or as a putative class action is simply irrelevant to the question of standing. *E.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action…adds nothing to the question of standing"); *Allee v. Medrano*, 416 U.S. 802, 829 (1974) ("Standing cannot be acquired through the back door of a class action."). Rather, if the named plaintiff lacks standing to maintain a particular claim, he cannot represent a class of people who do have standing. *See, e.g.*, *Cent. States Se. & Sw. Areas Health and Welfare Fund,* 433 F.3d 181, 199 (2d Cir. 2005) (named plaintiffs must show they individually have standing, not that unidentified members of the putative class do). It is beyond any question that, in an individual action, Plaintiffs would lack standing to sue on behalf of any plan other than the Plans in which they participated. Indeed, even *Fallick* recognized as much. 162 F.3d at 422. The fact that they have brought this suit as a putative class action cannot change this fact.

In addition, the question is not whether ERISA "bar[s]" a suit, but rather "whether the statute affirmatively authorizes such a suit." *Mertens*, 508 U.S. at 254 n.5. ERISA's statutory language does not authorize a plaintiff to challenge decisions affecting ERISA plans in which he does not participate. *See* 29 U.S.C. § 1132(a). These provisions are no accident. ERISA's legislative history indicates that Congress intended to limit participant claims for breach of fiduciary duty to participants' *own* plans. *See* H.R. Rep. No. 93-1280, at 148, 327 (1974) (Conf. Rep.), reprinted in 1974 U.S.C.C.A.N. 5038, ("[i]n addition to being able to request the Secretary of Labor to bring suit on their behalf...individual participants and beneficiaries will also be able to bring suit in Federal court…to obtain redress of fiduciary violations…. [and] participants and beneficiaries may bring suit to recover benefits denied contrary to the terms of *their* plan….") (emphasis added). In contrast, Congress intended to vest the Secretary of Labor with broad public powers to enjoin "practices" by fiduciaries which allegedly violate ERISA provisions. *Id.*

23

Thus, ERISA provides a statutory mechanism for broad groups of employee benefit plans to have their rights asserted by the Secretary, not through "private attorney general" participant lawsuits under Rule 23.  Permitting Plaintiffs to bring suit on behalf of other plans in which they do not participate would effectively eliminate the requirement of statutory standing and invade the sphere of public enforcement delegated to the Secretary.

Therefore, if the Court does not grant Defendants' motion to dismiss the First Amended Complaint in its entirety, it should nonetheless dismiss Plaintiffs' claims to the extent they are brought on behalf of Other Plans.

### B.   The Court Should Dismiss The Caterpillar Plaintiffs' Claims Arising Before September 10, 2009 Because They Were Released In A Prior Class Settlement

Plaintiffs Koch and Duran purport to bring claims on behalf of the Caterpillar 401(k) plan for the entire Class Period, yet a prior class action settlement bars all of their claims before September 10, 2009.

In November 2009, a group of plaintiffs bringing claims on behalf of the Caterpillar 401(k) plan (among others) entered into a class action settlement agreement with the defendants in that case.  *See Martin v. Caterpillar Inc.*, 07-CV-1009 (C.D. Ill. Dkt. 152-1.)  Thereafter, the *Martin* court certified a class action encompassing "all persons who, at any time between July 1, 1992 and September 10, 2009, inclusive had an account in" the Caterpillar 401(k) plan or related Caterpillar defined contribution plans.  (*Martin* Dkt. 173 at 4.)  After conducting a fairness hearing, the *Martin* court determined that the settlement agreement was fair and reasonable and finally approved it as binding on all *Martin* class members.  (*Martin* Dkt. 192.)

In exchange for over $16 million plus additional injunctive relief, the *Martin* settlement agreement established that:

> each Settlement Class Member shall be (i) conclusively deemed to have, and by operation of the Final Order shall have, fully, finally and forever settled, released, relinquished, waived and discharged…the Related Parties from all Released Claims, and (ii) barred from suing…the Related Parties in any action or proceeding alleging any of the Released Claims….

(*Martin* Dkt. 152-1 at Article 4.1.4.)  As relevant here, "Released Claims" means "Claims and causes of action…relating to the selection, oversight, and *performance of the investment options available under the Plans*…and any and all fees, costs or expenses charged to, paid or reimbursed by the Plans."  (*Martin* Dkt. 167-4 at Article 2.41.3 (emphasis added).)  Finally, "Related Parties" includes, among other things, "each Defendant's…employee benefit plan fiduciaries."  (*Martin* Dkt. 152-1 at Article 2.40.)

The *Martin* settlement clearly bars Plaintiffs Koch's and Duran's claims before September 10, 2009.  Based on their allegations, Plaintiffs Koch and Duran are *Martin* class members.  (Dkt. 47 ¶¶ 20-21.)  Their claims in this case, moreover, very clearly "relate[] to the…performance of" the Caterpillar Fund, which is an "investment option" available under the Caterpillar plan.  (*Martin* Dkt. 167-4 at Article 2.41.3.)  Finally, if – as Koch and Duran allege – Defendants are fiduciaries of the Caterpillar plan, then Defendants are "Related Parties" and Koch and Duran's claims against them are barred.  (*Martin* Dkt. 152-1 at Article 2.40.)

Thus, the Court should dismiss Koch and Duran's claims before September 10, 2009 because they are barred by the *Martin* settlement agreement.

### C.     The Court Should Dismiss Plaintiffs' Claims Against JPMC And RPS Because They Are Not ERISA Fiduciaries

Plaintiffs claim that JPMC and RPS were ERISA fiduciaries.  Plaintiffs' general and conclusory allegations, however, are clearly insufficient after *Twombly* and *Iqbal* to establish that these Defendants had any relevant fiduciary status.  The Court, therefore, should dismiss all claims against JPMC and RPS.

To state any claims, Plaintiffs must establish that the defendant in question was an ERISA fiduciary with respect to the challenged conduct.  *In re Citigroup*, 662 F.3d at 135.  As detailed above, ERISA fiduciary status is not an all or nothing concept.  An entity is a fiduciary only "to the extent" that it has or exercises discretionary authority with respect to the management or administration of the plan or its assets.  *Id.*  Plaintiffs' allegations fall well short of establishing that JPMC or RPS had *any* fiduciary status.

Plaintiffs' conclusory allegations that each Defendant "was a fiduciary with respect to the plans offering any of the Stable Value Funds and the participants in such plans at all relevant times," (Dkt. 47 ¶¶ 26-29), obviously do not satisfy Rule 8(a)'s requirements.  *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S.Ct. at 1949.  Plaintiffs' only other allegations related to fiduciary status also fall woefully short of establishing that JPMC and RPS had relevant fiduciary status.  In essence, Plaintiffs allege only that "one or more of" the Defendants "served as Investment Advisor, Investment Manager, Administrator, Trustee and/or Custodian of the plans' fund(s)" and were fiduciaries with respect to the plans "because, among other reasons, they possess investment discretion as to the Stable Value Funds."  (Dkt. 47 ¶ 36-37, 40.)

Plaintiffs' scattershot approach to pleading is obviously flawed.  It is clear that each of the four Defendants could not be the "Administrator" for each plan since ERISA contemplates designation of but a single plan administrator.  29 U.S.C. § 1002(16)(a).  Furthermore, Plaintiffs' pleading simply ignores the Plan documents.  For example, the Hospira Plan document identifies the plan administrator as:

> the Senior Vice President of Organizational Transformation and People Development or, if there is no person by such title, such other person acting as chief human resources officer of Hospira, Inc., unless the Board of Review appoints another entity or person(s) to administer the Plan.

Hill Declaration Ex. G, at § 15.4.[15]  Similarly, Plaintiffs ignore the fact – which is readily

obtained from the Plan's public filings with the Department of Labor – that Defendant RPS had

*no role whatsoever* with respect to the Caterpillar plan.  *See* Hill Declaration Ex. H.

      Moreover, Plaintiffs fail to describe, even in a conclusory fashion, how each Defendant's

supposed status as an "Investment Advisor," "Investment Manager," "Administrator," "Trustee,"

and "Custodian" translates into fiduciary status with respect to the Stable Value Fund.  Simply

pleading that a defendant had a certain role or title is insufficient to establish that it acted as a

fiduciary relative to the challenged conduct.  *Finkel v. Romanowicz*, 577 F.3d 79, 86-87 (2d Cir.

2009) (affirming dismissal of fiduciary duty claims where plaintiff failed to allege defendant

engaged in any activities which would make him a fiduciary under ERISA); *Fisher v. J.P.*

*Morgan Chase & Co.*, 703 F. Supp. 2d 374, 381-82 (S.D.N.Y. 2010) (granting defendants

judgment on the pleadings for breach of fiduciary duty claim where plaintiffs failed to allege

facts sufficient to show defendants were named or de facto fiduciaries); *see also Renfro v. Unisys*

*Corp.*, 671 F.3d 314, 324-25 (3d Cir. 2011) (allegations that defendants collectively held certain

titles were insufficient to establish that Fidelity was a fiduciary and that it had fiduciary status

with respect to the challenged conduct); *Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir.

2009) (same).

      Plaintiffs allege that RPS provided "account balances and fund performance information

to Plaintiffs and fund participants."  (Dkt. 47 ¶ 28.)  This allegation is not sufficient, because it

---

[15]  The Court may properly consider the Hospira Plan document without converting the Rule 12(b)(6) motion to a Rule 56 motion.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (district court could have considered attachments to motion to dismiss where there "was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim").  The Hospira Plan document has always been available to Whitley.  *See* 29 U.S.C. § 1024(b)(4) (requiring plan administrator to provide participant with a copy of the plan document upon request).  Moreover, the Hospira Plan is incorporated by reference in the First Amended Complaint (*see, e.g.*, Dkt. 47 ¶ 19, 33-35), and can properly be considered here.  *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.2d 69, 72 (2d Cir. 1995) (a "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference") (citing *Cortec Indus.*, 949 F.3d at 47)).

does not allege that RPS had discretionary control over these administrative functions.  29 U.S.C. § 1002(21)(A)(iii).

Plaintiffs cannot amend their complaint to plead around this deficiency.  Plaintiffs could not credibly allege facts establishing that RPS serves as a fiduciary, administrator, or investment manager of any of the Plans (much less the Caterpillar plan).  Likewise, Plaintiffs cannot in good faith allege facts sufficient to establish that JPMC operated in any fiduciary capacity with respect to any of the Plans.  The Court, therefore, should dismiss all of Plaintiffs' claims with respect to Defendants JPMC and RPS.

**V.     CONCLUSION**

For the reasons set forth above, the Court should dismiss with prejudice the First Amended Complaint.  In the alternative, the Court should:  (1) dismiss all claims purportedly on behalf of Other Plans, (2) dismiss Plaintiffs Koch and Duran's claims before September 10, 2009, and (3) dismiss all claims against JPMC and RPS.

Dated: October 24, 2012
      New York, New York

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:   /s Melissa D. Hill
     Melissa D. Hill
     101 Park Avenue
     New York, NY  10178-0060
     Tel. 212.309.6318
     Fax 212.309.6001
     melissa.hill@morganlewis.com

     Gregory C. Braden
     1111 Pennsylvania Avenue, NW
     Washington, D.C.  20004
     Tel. 202.739.5217
     Fax 202.739.3001
     gbraden@morganlewis.com

     Azeez Hayne
     1701 Market Street
     Philadelphia, PA  19103
     Tel. 215.963.5426
     Fax 215.963.5001
     ahayne@morganlewis.com

*Attorneys for Defendants*

DB1/ 71500380.1