IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD WHITLEY, CAROLETA M. DURAN, TERRY J. KOCH, MARK D. GRANDY, JOHN M. GATES, and SCOTT NEWELL, on behalf of themselves and those similarly situated,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>J.P. MORGAN CHASE & CO.; JPMORGAN CHASE BANK N.A.; J.P. MORGAN INVESTMENT MANAGEMENT INC., aka J.P. MORGAN ASSET MANAGEMENT; and JPMORGAN RETIREMENT PLAN SERVICES LLC,<br><br>    *Defendants*. | Case No. 12-cv-2548<br>The Honorable John G. Koeltl |

**[REDACTED] PLAINTIFFS' RESPONSE TO DEFENDANTS'
<u>NOTICE OF SUPPLEMENTAL AUTHORITY</u>**

**I.      INTRODUCTION**

    In a filing on April 5, 2013, Defendants brought to this Court's attention the Second Circuit's recent decision in *Pension Benefit Guarantee Corp. v. Morgan Stanley Investment Mgmt. Inc.*, -- F.3d --, 2013 WL 1296481 (2d Cir. 2013) ("*St. Vincent's*"). They also responded to Plaintiffs' Notice of Supplemental Authority (Dkt. 67) concerning the district court's decision denying a motion to dismiss in *Board of Trustees of the Operating Engineers Pension Trust v. J.P. Morgan Chase Bank.*, No. 09-Civ-9333 (S.D.N.Y. March 27, 2013). In their filing, Defendants argue that Plaintiffs' Amended Complaint should be dismissed because it is not pleaded with sufficient particularity under the standard applied in *St. Vincent's*.

    Defendants' reliance on *St. Vincent's* is misplaced. In *St. Vincent's*, the plaintiffs claimed that the defendant disproportionately invested the portfolio's assets in mortgage-backed

1

securities despite numerous "warning signs" that those investments were unsound. *St. Vincent's*, 2013 WL 1296481 at * 10. The court ultimately determined that the plaintiffs did not adequately state a claim because — even after two opportunities to amend — their complaint relied too heavily on "facts known only in hindsight" and "general allegations about warning signs." *Id.* at 1. The court in *St. Vincent's* also noted that one of the plaintiffs was the fiduciary plan administrator and thus "was in a position to plead its claims with greater factual detail than is typically accessible to plaintiffs prior to discovery." *Id.* at 1.

This case is quite different from *St. Vincent's*. First, Plaintiffs here are plan participants, not plan administrators. Furthermore, Plaintiffs here do not rely on "hindsight" allegations regarding general "warning signs" concerning mortgage-related assets coming from the market. Rather, the Amended Complaint alleges, among other things, that:

(1) Defendants engaged in a ***deliberate*** strategy to take on additional risk to increase the yield of their Stable Value Funds as compared to competitors. Am. Comp. at ¶¶ 9, 45, 52-55 and Ex. A to Plaintiffs' Opposition to Defendants' Motion to Dismiss First Amended Complaint ("Opposition");

(2) This divergence from the common investment strategies of such funds was wholly inappropriate in light of the "character and aims" of stable value funds. Am. Comp. ¶¶ 3, 8, 9, 41-50;

(3) Defendants understood the risks of investments in mortgage-related assets, as demonstrated by their divestment of billions of dollars of such assets for their own account in 2006. Am. Comp. ¶¶ 13, 72;

(4) As part of their investment strategy, Defendants invested in private placement mortgages that they themselves underwrote and rated, which is especially significant given Defendants' CEO's admission that their underwriting standards were too lax during the relevant time period. Am. Comp. ¶¶ 65-71; and

(5) Defendants also engaged in conflict of interest transactions prohibited by ERISA, a type of ERISA violation that *St. Vincent's* did not address. Am. Comp. ¶¶ 121-133.

Moreover, these facts are not only alleged with particularity in the Amended Complaint; they are also corroborated by facts obtained thus far in discovery.[1] Those facts show that Defendants chose a uniquely risky investment strategy to increase yields and maintained that strategy – even after being warned directly that the Stable Value Funds were too heavily invested in mortgages and even after deciding to divest mortgage-related assets held for their own account – until the Stable Value Funds' wrap providers forced them to adopt more appropriate and conservative investment guidelines.

In short, Defendants err both in their reading of *St. Vincent's* and in their putative application of the *St. Vincent's* holding to this matter. Their supplemental authority filing should thus be disregarded and their pending dismissal motion denied.

## II. *ST. VINCENT'S* DID NOT ADDRESS AN ERISA PRUDENCE CLAIM BASED ON DELIBERATELY EMPLOYING A RISKY AND UNSUITABLE INVESTMENT STRATEGY.

*St. Vincent's* is a classic "hindsight" prudence case. That is to say, the plaintiffs in that case alleged that the defendant breached its fiduciary duties under ERISA by purchasing and holding certain securities that turned out to be poor investments. The primary shortcoming of the allegations in that case was that the plaintiffs relied too heavily on: (1) generalized allegations that the defendant failed to heed certain alleged "warning signs" about the quality of mortgage-backed securities and the subsequent decline in the value of such securities; and (2) comparisons

---

[1] Of course, in deciding a motion to dismiss, this Court is limited to the allegations in the Amended Complaint and those documents referenced in the complaint. Extrinsic evidence is relevant, however, to determine whether to allow amendment. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012) (accepting representations in brief and at oral argument that additional facts could be alleged to meet applicable pleading standard). In this case, requiring a further amendment simply to add evidentiary details that are already well-known to Defendants should not be necessary, given the pendency of the fully briefed motion to dismiss. As set forth below, however, if the Court believes that *St. Vincent's* has imposed a pleading standard that Plaintiffs have not yet satisfied, they are entitled per *Ficeto* to at least one final opportunity to do so.

3

between the concentration of such securities in the investment portfolios at issue and a particular benchmark, which the court felt lacked sufficient context to be meaningful. In short, the plaintiffs in *St. Vincent's* failed to allege "facts supporting the plausible inference that defendant-appellee knew, or should have known, that the particular mortgage-backed securities in the relevant portfolio were imprudent investments." *St. Vincent's*, 2013 WL 1296481 at * 12. The allegations in *St. Vincent's* were so broad, generalized, and unconnected to any specific facts about the defendant in that case that they would have supported breach of fiduciary duty claims against practically *every* ERISA fiduciary that invested in and held non-agency mortgage-backed securities through the financial crisis.

Here, by contrast, the claims in the Amended Complaint turn fundamentally on: (1) the nature of stable value funds, which Defendants themselves represented to be the "most conservative" investment option available to retirement investors and which were, as a matter of industry practice, designed and intended to be insulated from market fluctuations, *see* Am. Comp. at ¶¶ 3 and 43-45, and (2) the fact that Defendants expressly designed their stable value investment strategy to generate higher yields than competing funds (with a corresponding undisclosed increase in risk), *see* Am. Comp. at ¶¶ 9, 45, 52-55 and Ex. A to Opposition. The fact that competing stable value funds performed well during the financial crises (but not as well when times were good) reflects much more than hindsight. It was the inevitable result of the fact that Defendants' investment strategy *by design* entailed higher exposure to market volatility than was otherwise accepted in the industry.

Furthermore, the plaintiffs in *St. Vincent's* relied entirely on circumstantial evidence and lacked factual allegations "referring *directly* to Morgan Stanley's knowledge, methods, or investigations at the relevant times." *St. Vincent's*, 2013 WL 1296481 at * 8 (emphasis in

original). By contrast, the Amended Complaint here contains direct allegations about Defendants' "knowledge" and "methods."

With respect to Defendants' knowledge, Defendants knew at least as of **2006** that the mortgage-related assets they held for their own account were unacceptably risky and, as a result, dramatically divested themselves of $12 billion of such assets. Am. Comp. at ¶¶ 13-14, and 72. The allegations in this case are therefore practically identical to those found to be adequate to state a claim for breach of the duties of prudence and loyalty in *The Board of Trustees of the Operating Engineers Pension Trust v. JP Morgan Chase Bank, National Association*, No. 09-Civ-9333 (S.D.N.Y. March 27, 2013). As is the case here, the claims in *Operating Engineers* were largely based on the fact that JP Morgan knew about specific risks and acted on that knowledge when its own funds were at stake but not when acting as a fiduciary managing ERISA plan assets.

With respect to Defendants' investment-vetting methods at issue in this case, Defendants' CEO admitted that, during the relevant times (2005 through 2007), their underwriting standards for mortgages (such as those underwritten by Defendants for the Stable Value Funds) were flawed. Am. Comp. at ¶ 71. Furthermore, Plaintiffs allege that Defendants disguised the existence of sub-investment-grade investments in the Stable Value Fund portfolios by self-rating certain investments, to Plaintiffs' detriment. Am. Comp. at ¶ 67. Finally, Plaintiffs allege that Defendants manipulated the crediting rates in the Stable Value Funds as a further method of disguising the bad results of their imprudent investment decisions – from which it can be reasonably inferred that Defendants were aware that their investment strategy was imprudent. Am. Comp. at ¶ 76.

With respect to allegations regarding Defendants' "investigations," unlike *St. Vincent's*, which the court viewed as alleging primarily a failure of adequate investigation, this case does not turn on the adequacy of Defendants' initial investigation of investments held by the Stable Value Funds. As was recognized in *In re State Street Bank & Trust Co. Fixed Income Funds Investment Litigation*, 842 F. Supp. 2d 614, 657 (S.D.N.Y. 2012), and *California Ironworkers Field Pension Trust v. Loomis Sayles & Co.,* 259 F.3d 1036, 1044-45 (9th Cir. 2001), it is possible for a fiduciary to investigate an investment adequately in the abstract but nonetheless act imprudently by deliberately executing a strategy that is not suitable for the "character and aims" of a particular kind of investment fund. *See* Opposition at p. 17. Here, the question is not only whether Defendants made an improper investigation in response to market developments, as it was in *St. Vincent's*, but rather whether Defendants had actual knowledge of the inherent risk that illiquid mortgages and the mortgage-related securities posed to a stable value fund and nevertheless chose to imprudently disregard that risk. Am. Comp. at ¶¶ 5, 7, 54, 68 and 106.

The Amended Complaint also alleges additional evidence from which the Court could draw a plausible inference that Defendants acted imprudently. As Plaintiffs allege, Defendants suffered a $373 million judgment based in part on their misrepresentations to a former business partner about the quality of the mortgage assets in their Stable Value Funds. Am. Comp. at ¶ 64. And tellingly, the wrap providers – who also are financially exposed to any downturn in the funds at issue here – forced Defendants to substantially modify their investment guidelines so as to, among other things, no longer invest in private placement mortgages. Am. Comp. at ¶ 82.

In summary, the Amended Complaint in this case – in contrast to the complaint found to be inadequate in *St. Vincent's* – contains a wealth of specific allegations that set forth a more than plausible case that Defendants breached their fiduciary duties under ERISA. This case is

based on much more than generic "warning signs" available to anyone in the market: all the allegations here are connected directly to the decisions, knowledge, and methods of these particular Defendants.

### III. INFORMATION OBTAINED IN DISCOVERY CORROBORATES THE ALLEGATIONS IN THE AMENDED COMPLAINT.





8





These are only a few examples of additional facts developed through discovery that support of the allegations in the Amended Complaint. These facts – of which Defendants have been aware since the beginning of this litigation – show that Defendants' challenge to the adequacy of the Amended Complaint is strategic and not actually reflective of the merits of Plaintiffs' claims.

## IV.     *ST. VINCENT'S* DOES NOT AFFECT PLAINTIFFS' OTHER CLAIMS.

Defendants argue that the Amended Complaint must be dismissed in its entirety because allegations of breach of fiduciary duty are inadequate under *St. Vincent's*. However, only Count I alleges breach of the fiduciary duty of prudence. The other counts – violation of ERISA's exclusive benefit rule (Count II), lack of candor (Count III) and prohibited transactions (Counts IV and V) – are not impacted by *St. Vincent's*. Indeed, they are nowhere mentioned, much less addressed, in Defendants' memorandum. Thus, Defendants' request that the Amended Complaint be dismissed in its entirety (Notice of Supplemental Authority at 1, 10) is wholly unsupported by *St. Vincent's* – even if their argument on this score is correct as to *St. Vincent's* and Plaintiffs' prudence claim.

10

## V.     IN THE ALTERNATIVE, THIS COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND.

Finally, if this Court believes that Plaintiffs' prudence claim is inadequately alleged in light of *St. Vincent's,* Plaintiffs should be granted leave to amend for at least two reasons.

First, *St. Vincent's* arguably represents an intervening change of law, if Defendants' reading of it is correct (and Plaintiffs dispute that it is) – namely, the articulation of a new, heightened pleading standard for ERISA prudence claims. Such a putative intervening change of law is ample justification for leave to file an amended complaint. *Ficeto*, 677 F.3d 60 at 71 (granting leave to amend in light of Supreme Court's decision in *Morrison v. National Australia Bank Ltd.* regarding the extraterritorial effect of U.S. securities laws and the court's subsequent "guidance about how to adequately plead a domestic purchase and sale"); *Tuosto v. Phillip Morris USA Inc.*, 672 F.Supp.2d 350, 366 (S.D.N.Y. 2009) (granting leave to replead in light of intervening clarification of law). Defendants themselves assert that *St. Vincent's* is "new" law by arguing that *Operating Engineers* is no longer valid. (Notice of Supplemental Authority at 9.) To the same effect is the dissent in *St. Vincent's*, where Judge Straub states that the majority "announces a new and unjustified hurdle which ERISA plaintiffs must surmount to vindicate their rights." Straub dissent at 11-12.[2]

Second, despite Plaintiffs' best efforts, they were only recently able to obtain highly relevant documents from the American Century Investments arbitration (referenced in paragraph 64 of the Amended Complaint) because such documents were subject to a protective order. *See* attached Declaration of Michael Mulder (describing Plaintiffs' efforts to obtain this information). Where additional information is uncovered through discovery, courts have allowed plaintiffs

---

[2] Judge Straub's dissent is not included in the copy of *St. Vincent's* appended to Defendants' Notice of Supplemental Authority. A copy of the dissent is appended to this memorandum as Attachment B.

11

leave to file an amended complaint. *See Estate of Ratcliffe v. Pradera Realty Co.*, 2007 WL 3084977 (S.D.N.Y. October 19, 2007) (granting leave to file third amended complaint based on newly obtained evidence during discovery); *MGR Meats, Inc. v. Schweid*, 2012 WL 6675123, *8-9 (E.D.N.Y. December 21, 2012) (granting leave to amend complaint to add defendant and cause of action following new evidence obtained in discovery).

Leave to amend to add additional allegations developed through discovery is especially appropriate if Defendants' interpretation of *St. Vincent's* is credited because, unlike *St. Vincent's*, this is not a case that could reasonably have been pleaded to Defendants' desired specificity based solely on the documents available to the involved retirement plan participants.[3] While plan participants can obtain a listing of the investments of their ERISA plans, such a listing would have disclosed no information about how Defendants' investment strategies differed from industry standards and/or Defendants' knowledge of the risks inherent in their investment strategies. Indeed, Ms. Paradis has admitted that plan sponsors themselves lack sufficient information to evaluate their stable value fund investments: "plan sponsors simply haven't had adequate tools to support their fiduciary responsibilities with respect to these [stable value] funds." Am. Comp. at ¶ 78. As the court in *St. Vincent's* noted, "ERISA plaintiffs generally lack the inside information necessary to make claims in detail unless and until discovery commences," *St. Vincent's*, 2013 WL 1296481 at * 8 (internal quotation omitted). This observation is especially salient here given the nature of Plaintiffs' claims and Defendants' admissions about the lack of information possessed by plan sponsors. Indeed, even in *St.*

---

[3] Furthermore, the plaintiff in *St. Vincent's* was a plan sponsor rather than a plan participant. Sponsors have access to more information than participants and can be expected to be far more sophisticated in their understanding of the information they receive.

*Vincent's*, where the court emphasized the information available to plan sponsors, it noted that the plaintiff there had been given *two* opportunities to amend its complaint. *Id.* at *1.

## VI.     CONCLUSION

*St. Vincent's* ultimately changes nothing about this case. Plaintiffs' theory of this case has been sufficiently alleged and is not only plausible, but plainly correct in many material respects as shown by Defendants' own documents. Defendants' pending motion to dismiss should be denied forthwith, and this case should proceed to class certification and trial. In the alternative, the Court should grant Plaintiffs leave to file a Second Amended Complaint.

Respectfully submitted,

Dated: April 30, 2013                        /s/ Michael M. Mulder

Kevin Madonna (Bar No. KM5595)
KENNEDY & MADONNA, LLP
48 Dewitt Mills Rd.
Hurley, NY 12443
Tel: 845-481-2622
Fax: 845-230-3111

Jason Kim
SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
jkim@schneiderwallace.com
*Appearing pro hac vice*

Garrett W. Wotkyns, Esq.
SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP
8501 N. Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
Tel: (480) 428-0144
Fax: (866) 505-8036
gwotkyns@schneiderwallace.com
*Appearing pro hac vice*

Thomas R. Meites, Esq.
Michael M. Mulder, Esq.
MEITES MULDER
321 S. Plymouth Ct., Ste. 1250
Chicago, Ill. 60604
Tel: 312-263-0272
Fax: 312-263-2942
trmeites@meitesmulder.com
mmmulder@meitesmulder.com
*Appearing pro hac vice*

Joseph Peiffer, Esq.
FISHMAN HAYGOOD PHELPS
WALMSLEY WILLIS & SWANSON, LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Tel: (504) 586-5252
Fax: (504) 586-5250
jpeiffer@fishmanhaygood.com
*Appearing pro hac vice*

Peter Mougey, Esq.
James Kauffman, Esq.
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 So. Baylen Street, Suite 600
Pensacola, FL 32502
pmougey@levinlaw.com
jkauffman@levinlaw.com
*Appearing pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

      I, Michael M. Mulder, hereby certify that on this 30th day of April, 2013, I electronically filed [REDACTED] PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL AUTHORITY using the United States District Court for the Southern District of New York's CM/ECF system, which will provide service of such filings via email to all counsel of record in this action:


Melissa D. Hill
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178

Gregory C. Braden
Sean K. McMahan
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004

Azeez Hayne
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103


                                                /s/ Michael M. Mulder