# Attachment B

10-4497-cv
*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: January 24, 2012                                    Decided:  April 2, 2013)

Docket No. 10-4497-cv

――――――――――――――――――――――――――――――――

PENSION BENEFIT GUARANTY CORP., on behalf of Saint Vincent Catholic Medical
Centers Retirement Plan, SAINT VINCENT CATHOLIC MEDICAL CENTERS,
QUEENSBROOK INSURANCE LTD.,

*Plaintiffs-Appellants*,

v.

MORGAN STANLEY INVESTMENT MANAGEMENT INC.,

*Defendant-Appellee.*

――――――――――――――――――――――――――――――――

Before: CABRANES, STRAUB, and LIVINGSTON, Circuit Judges.

In this appeal we consider the degree of factual detail needed in a complaint in order to

present nonconclusory and plausible allegations that a pension plan administrator purchased and

continued to hold certain mortgage-backed securities in violation of its fiduciary duties under the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  We agree

with the United States District Court for the Southern District of New York (P. Kevin Castel, *Judge*)

that the amended complaint fails to allege facts supporting the plausible inference that defendant-

appellee knew, or should have known, that the particular mortgage-backed securities in the relevant

1   STRAUB, *Circuit Judge*, dissenting in part:

2        In enacting the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

3   § 1001, *et seq.*, Congress sought to ensure "the continued well-being and security of millions of

4   employees and their dependents" by regulating employee benefit plans.  *See id.* § 1001(a).  To

5   achieve this goal, Congress required the fiduciaries of ERISA benefit plans to act in accordance

6   with stringent standards of conduct.  *See id.* § 1001(b).  "The fiduciary obligations of the trustees

7   to the participants and beneficiaries of [an ERISA] plan are those of trustees of an express trust –

8   the highest known to the law."  *LaScala v. Scrufari*, 479 F.3d 213, 219 (2d Cir. 2007) (alterations

9   in original) (quoting *Donovan v. Bierwitz*, 680 F.2d 263, 272 n.8 (2d Cir. 1982) (Friendly, J.)).

10        Such standards are enforced in part by private litigation.  *See Braden v. Wal-Mart Stores,*

11   *Inc.*, 588 F.3d 585, 597 n.8 (8th Cir. 2009) (citing 29 U.S.C. § 1136(b)).  Accordingly, the

12   Secretary of Labor ("Secretary"), charged with administering ERISA, "has expressed concern

13   over the erection of unnecessarily high pleading standards in ERISA cases."  *Id.* (internal

14   quotations omitted).  In the Secretary's view, heightened pleading requirements threaten to

15   obstruct ERISA's remedial goals.  *See id.*

16        Against the backdrop of strong statutory protections and the Secretary's judgment that

17   "unnecessarily high pleading standards" should not be permitted to render such protections moot,

18   the majority in effect embraces a heightened pleading standard which threatens to do exactly that.

19   ERISA should not be gutted by the judicial imposition of a pleading standard with no basis in

20   law.  While I agree with the majority that the District Court was correct to dismiss Plaintiffs'

21   claims for breach of the fiduciary duty to diversify and breach of the duty to act in accordance

22   with the documents and instruments governing the Plan, I would find that Plaintiffs have

1  adequately stated a claim for a breach of the fiduciary duty of prudence.  Accordingly, I

2  respectfully dissent in part.

3  **BACKGROUND**

4  Plaintiffs in this action claim that their investment manager, Morgan Stanley Investment

5  Management ("MSIM")[1], violated ERISA by failing to manage the fixed-income portfolio of the

6  investment Plan at issue with the ERISA-mandated standard of care, skill, prudence and

7  diligence ("Prudence Claim").

8  According to Plaintiffs, they instructed MSIM to carry out a low-risk investment strategy

9  with respect to their Plan assets.  Specifically, Plaintiffs allegedly promulgated written

10  investment guidelines, which specified that the Plan's "primary investment objective" was the

11  "preservation of principal with emphasis on long-term growth."  Am. Compl. ¶ 20.  In addition,

12  Plaintiffs designated as a performance benchmark what is now known as the Citigroup Broad

13  Investment Grade Index ("Citigroup BIG").  *Id.* ¶ 21.  Plaintiffs claim that "the selection of the

14  Citigroup BIG index as a benchmark signaled to MSIM that, as an ERISA fiduciary, it was

15  required to execute a low-risk, conservative investment strategy."  *Id.*

16  MSIM allegedly departed from the foregoing, conservative investment strategy by

17  placing large amounts of the Portfolio's assets into high-risk investments.  For example, MSIM

18  allegedly invested between 9% and 12.6% of the Portfolio in "non-agency mortgage securities"

19  during the relevant time period.  *Id.* ¶ 23.  Such securities failed to meet the underwriting

20  standards of Fannie Mae and Freddie Mac, and thus were not guaranteed.  *Id.* ¶ 22 n.2.  By

21  contrast, the Citigroup BIG had no exposure to non-agency mortgage securities.  *Id.* ¶ 23.

---

[1] While the majority refers to Defendant as "Morgan Stanley", I use the term
MSIM so as to distinguish the investment advisor branch of Morgan Stanley from
its parent company.

1    According to Plaintiffs, these and other investments "directly exposed the Plan to the

2    volatility of the subprime mortgage market," at precisely the time borrower defaults "were

3    skyrocketing and numerous subprime lenders were facing insolvency." *Id.* ¶ 29.  Plaintiffs

4    claim that MSIM "continued to maintain the fixed-income portfolio's allocation to . . . mortgage

5    securities" "[e]ven as . . . many . . . problems in the mortgage-backed securities market came to

6    light." *Id.* ¶ 43.  For example, MSIM invested Plan assets in mortgage securities issued by

7    IndyMac Bank, Bear Stearns, Washington Mutual, and Countrywide, each of which suffered

8    severe losses due to mortgage failures.  *Id.* ¶¶ 31, 36-41.  Plaintiffs claim that damages resulting

9    from imprudent investment of the Plan's assets during the relevant time period exceed $25

10   million.  *Id.* ¶ 27.

11    The District Court concluded that Plaintiffs' Amended Complaint did not sufficiently

12   allege MSIM's imprudent management of the Plan.  It found that the Amended Complaint lacked

13   allegations that MSIM inadequately investigated the merits of its investments, and instead

14   focused on "the poor results of the investments."  (JA 218.)

15                                          **DISCUSSION**

16   *I.*      *Applicable Law and Standard of Review*

17    We test the sufficiency of a complaint by a familiar standard.  But in affirming the

18   dismissal of Plaintiffs' Prudence Claim, the majority here effectively – and contrary to

19   authority – deviates from it.  To show why this is so, I briefly review what the Supreme Court

20   has prescribed as the minimum required in order to state a claim upon which relief can be

21   granted.

22    Rule 8 of the Federal Rules of Civil Procedure provides that a complaint must contain "a

23   short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

1    P. 8(a)(2).  To meet this standard, and thus survive a motion to dismiss under Rule 12(b)(6), "a

2    complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

3    plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

4    *Twombly*, 550 U.S. 544, 570 (2007)).

5         "A claim has facial plausibility when the pleaded factual content allows the court to draw

6    the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S.

7    at 678.  The plausibility standard is not a "probability requirement."  *Id.*  "[I]t simply calls for

8    enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting a

9    plaintiff's claim for relief.  *See Twombly*, 550 U.S. at 556.  A complaint thus need not contain

10   "detailed factual allegations," *see Iqbal*, 556 U.S. at 678; indeed, we have rejected the

11   "contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts

12   beyond what is needed to make [a] claim plausible."  *Arista Records, LLC v. Doe 3,* 604 F.3d

13   110, 120-21 (2d Cir. 2010).  "The plausibility standard requires a plaintiff to show at the

14   pleading stage that success on the merits is more than a 'sheer possibility.'"  *Braden*, 588 F.3d at

15   594 (quoting *Iqbal*, 556 U.S. at 678).  Indeed, "a well-pleaded complaint may proceed even if it

16   strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is

17   very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotations omitted).  This is so

18   because, as the majority itself notes, "a reasonable inference need not be 'as compelling as any

19   opposing inference' one might draw from the same factual allegation."  Maj. Op. at 23 n.20

20   (quoting *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, --- F.3d ----, No. 12-

21   1707-cv, 2013 WL 765178, at *9 (2d Cir. Mar.1, 2013).

1    We review *de novo* the dismissal of a complaint pursuant to Rule 12(b)(6), accepting all

2    factual allegations as true and drawing all reasonable inferences in favor of the plaintiff.  *Caro v.*

3    *Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010).

4    **II.    Plaintiffs' Prudence Claim Is Adequately Stated**

5        **A.    Applicable Law**

6        To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts

7    which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty,

8    and thereby caused a loss to the plan at issue.  29 U.S.C. § 1109(a); *Pegram v. Herdrich*, 530 U.S.

9    211, 225-26 (2000).  The only element at issue here is whether MSIM breached its fiduciary duty.

10        An ERISA fiduciary must discharge its duties "with the care, skill, prudence, and

11    diligence under the circumstances then prevailing that a prudent man acting in a like capacity

12    and familiar with such matters would use in the conduct of an enterprise of a like character and

13    with like aims."  29 U.S.C. § 1104(a)(1)(B).

14        ERISA's "prudent man" standard is an objective one; it focuses on the process of the

15    fiduciary's conduct preceding the challenged decision.  *See, e.g.*, *Braden*, 588 F.3d at 595;

16    *Katsoros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984).  The standard asks whether the fiduciary, at

17    the time he engaged in the challenged transaction, "employed the appropriate methods to

18    investigate the merits of the investment and to structure the investment."  *Henry v. Champlain*

19    *Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006) (internal quotations omitted).  "[T]he

20    thoroughness of a fiduciary's investigation is measured not only by the actions it took in

21    performing it, but by the facts that an adequate evaluation would have uncovered."  *In re Unisys*

22    *Sav. Plan Litig.*, 74 F.3d 420, 436 (3d Cir. 1996); *see also In re: Citigroup ERISA Litig.*, 662

23    F.3d 128, 141 (2d Cir. 2011).

-5-

1    Where a "fiduciary was aware of a risk to the fund, he may be held liable for failing to

2    investigate fully the means of protecting the fund from that risk."  *Chao v. Merino*, 452 F.3d 174,

3    182 (2d Cir. 2006).

4    **B.    Allegations Regarding MSIM's Mismanagement of Plan Assets**

5    Reasonable inferences drawn from Plaintiffs' factual allegations render it at least

6    plausible that the process by which MSIM selected and managed Plaintiffs' investments was

7    tainted by failure of effort or competence.  Because Plaintiffs have alleged sufficient facts to

8    state a claim for breach of the ERISA duty of prudence, the District Court erred in dismissing

9    their Prudence claim.

10    **1.    Analysis**

11    The majority acknowledges that a complaint which contains "no factual allegations

12    referring *directly* to MSIM's knowledge, methods, or investigations at the relevant times," Maj.

13    Op. at 16, can survive a motion to dismiss so long as "the court, based on circumstantial factual

14    allegations, may reasonably 'infer from what is alleged that the process was flawed.'"  Maj. Op.

15    at 17 (quoting *Braden*, 588 F.3d at 596).  While the majority rejects the significance of Plaintiffs'

16    alleged "warning signs," I would find that, when taken together, these allegations support the

17    reasonable inference that MSIM's choices failed to meet ERISA's requirements.  *See Braden*,

18    588 F.3d at 594 ("the complaint should be read as a whole, not parsed piece by piece to

19    determine whether each allegation, in isolation, is plausible.") (citing *Vila v. Inter-Am. Inv. Corp.*,

20    570 F.3d 274, 285 (D.C. Cir. 2009).

21    According to Plaintiffs, MSIM's mandate as the Plan's fixed-income investment manager

22    was to manage the Portfolio with a focus on preservation of principal, with an emphasis on long-

23    term growth.  The written investment guidelines further designated Citigroup BIG as the

-6-

1  applicable investment benchmark; this allegedly "signaled to MSIM that, as an ERISA fiduciary,

2  it was required to execute a low-risk, conservative investment strategy."  Am. Compl. ¶ 21.

3          MSIM allegedly "abandoned this conservative investment profile to speculate in high-

4  risk, mortgage-backed investments," *id.* ¶ 28, by making "high-risk investments . . . at precisely

5  the time when defaults of subprime mortgages were skyrocketing and numerous subprime

6  lenders were facing insolvency."  *Id.* ¶ 29.  Moreover, Plaintiffs allege that MSIM "failed to

7  monitor the Plan's investments to protect the Plan from economic harm."  *Id.* ¶ 61.  According to

8  Plaintiffs, "warning signs" appeared throughout 2007 and 2008, which signaled that the non-

9  agency RMBS securities "were not appropriate for the fixed-income portfolio."  *Id.* ¶ 35.  For

10  example, in 2007, analysts predicted that Morgan Stanley – MSIM's parent company – would

11  write down $6 billion on the value of similar mortgage securities.  In addition, MSIM invested

12  Plan assets in subprime mortgage securities issued by, *inter alia*, IndyMac, Bear Stearns, and

13  Countrywide.  Reports filed by these entities in 2007 reflected (1) the rapid increase in

14  delinquencies and non-performing home loans, *id.* at ¶ 38; (2) rising defaults "across all

15  mortgage categories," *id.* at ¶ 41; (3) the fact that investments backed by risky mortgages had left

16  two of Bear Stearns's hedge funds "virtually worthless," *id.* at ¶ 40; and (4) predictions that

17  "before it turns around," the housing downturn would be "the longest and deepest since the Great

18  Depression."  *Id.* at ¶ 38.

19          In light of these warning signs, MSIM allegedly "knew or should have known" that

20  exposing the Portfolio to such high-risk mortgage securities was imprudent.  *Id.* at ¶ 34.  Yet,

21  Plaintiffs allege, MSIM continued to maintain the Portfolio's allocation of these risky

22  investments from the fourth quarter of 2007 through 2008.  As a result, the Portfolio

23  "significant[ly] underperform[ed] relative to the Citigroup BIG benchmark": in the fourth quarter

1   of 2007, the Portfolio ended the quarter up 0.8%, whereas the Citigroup BIG ended the quarter

2   up 5.7%; for 2008, the Portfolio was down 12%, while the Citigroup BIG was up 7%.  *Id.* at ¶ 26.

3              While Plaintiffs' Amended Complaint does not specifically detail the processes by which

4   MSIM allegedly mismanaged the Plan, *see, e.g.*, Am. Compl. ¶ 33 ("Had MSIM managed the

5   fixed-income portfolio appropriately and according to its stated objective and risk level, the

6   losses incurred by the Plan would not have occurred."), it is nonetheless reasonable to infer from

7   what is alleged "that [MSIM's] process was flawed."  *Braden*, 588 F.3d at 596.  Plaintiffs allege

8   that MSIM acted imprudently by maintaining investments in high-risk mortgage securities, at a

9   time when MSIM knew or should have known that the market for such securities was collapsing.

10  Moreover, Plaintiffs allege contemporaneous "warning signs" and do not rely on "the vantage

11  point of hindsight."  *In re Citigroup*, 662 F.3d at 140 (internal quotation marks omitted).

12  Accepting these facts as true, and drawing all reasonable inferences in the light most favorable to

13  the Plaintiffs – as we must on a motion to dismiss – these allegations give rise to a reasonable

14  inference that "the process by which [MSIM] selected and managed the [investments] in the

15  [Portfolio] [was] tainted by failure of effort [or] competence," *Braden*, 588 F.3d at 596.  Whether

16  or not they would ultimately prevail on their claim, Plaintiffs have – at a minimum – stated

17  allegations which, when read in their favor, make MSIM's breach of its duty of prudence more

18  than a "mere possibility."

19                    ***2.     MSIM's Arguments Are Without Merit***

20             MSIM's attempt to portray each of Plaintiffs' allegations as insufficient is unpersuasive. [2]

21  Contrary to the analysis MSIM invites us to undertake, it is well-settled that a complaint must be

---

[2] MSIM begins by arguing that "the [Amended Complaint] contains no allegations
that MSIM's investment processes were deficient."  Appellee's Br. at 18.  As

1    read "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is

2    plausible." *Braden*, 588 F.3d at 594 (citing *Vila*, 570 F.3d at 285); *see also id.* at 598 (stating

3    that courts must undertake a "careful and holistic evaluation of an ERISA complaint's factual

4    allegations before concluding that they do not support a plausible inference that the plaintiff is

5    entitled to relief").   In any event, MSIM's arguments are without merit at the pleading stage.

6         First, MSIM contends that it is "irrelevant" whether, as Plaintiffs claim, the issuers of the

7    mortgage securities in which MSIM invested "lost money" during the relevant time period.

8    Appellee's Br. at 20-21.  According to MSIM, this is so because "the default risk of a mortgage-

9    backed security depends not on the financials of the issuer, but on the characteristics of the

10   underlying *mortgages*."  Appellee's Br. at 20.  Whether MSIM's contention is correct is a factual

11   question ill-suited for resolution at the pleading stage.  In any event, where – as Plaintiffs

12   allege – issuers of mortgage-backed securities announce massive losses due to defaults on the

13   loans underlying such securities, it is at least plausible that such losses may say something about

14   the overall risk of those types of securities.

15        Second, MSIM discounts Plaintiffs' allegation that Morgan Stanley – MSIM's parent

16   company – was predicted by analysts to write down $6 billion worth of mortgage-backed

17   securities similar to those in the Portfolio.  MSIM faults Plaintiffs for failing to allege that MSIM

18   "had knowledge of the predicted write-down or its bases, or that MSIM had any involvement

19   with Morgan Stanley's decision to invest in the relevant securities."  Appellee's Br. at 21.  As a

20   preliminary matter, whether MSIM in fact knew of its parent's predicted write-down is "inside

21   information" Plaintiffs likely have no way of knowing "unless and until discovery commences,"

---

discussed, however, drawing reasonable inferences in Plaintiffs' favor renders
plausible the claim that MSIM's process was tainted.

1   *Braden*, 588 F.3d at 598.  In any event, and contrary to MSIM's argument, Plaintiffs do allege

2   that Morgan Stanley's predicted write-down, together with other red flags, constituted "warning

3   signs" of which MSIM "knew or should have known."  Am. Compl. ¶¶ 34-35.

4        Third, MSIM argues that, although Plaintiffs allege that Standard & Poor's downgraded

5   the credit ratings on $7 billion worth of Alt-A mortgage securities in December 2007, Plaintiffs

6   fail to allege "that any securities *held by the* [*Portfolio*] were downgraded."  Appellee's Br. at 22.

7   MSIM cites no authority requiring ERISA plaintiffs to plead such evidence – and do so with

8   such particularity – in order to survive a motion to dismiss.  Plaintiffs have alleged facts which,

9   if true, demonstrate the publicly-known volatility of the mortgage securities market.  In light of

10  Standard & Poor's $7 billion downgrade, it is at least plausible that a reasonable fiduciary would

11  have reevaluated its decision to invest in that sector.  *See, e.g.*, *Armstrong v. LaSalle Bank Nat'l*

12  *Ass'n*, 446 F.3d 728, 734 (7th Cir. 2006) ("A [fiduciary] who simply ignores changed

13  circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent.").

14       Similarly, MSIM cites to several district court decisions – many of which do not arise in

15  the ERISA context – for the proposition that industry-wide troubles are insufficient to

16  demonstrate MSIM knew or should have known of the risk associated with the investments at

17  issue.  As discussed in part C, *infra*, "ERISA plaintiffs generally lack the inside information

18  necessary to make out their claims in detail unless and until discovery commences."  *Braden*,

19  588 F.3d at 598.  Plaintiffs have nonetheless made the common sense allegations that MSIM

20  knew or should have known of the mortgage crisis by virtue of its role as investment manager

21  and its experience in the marketplace.  According to Plaintiffs, analysts predicted in 2007 that

22  *MSIM's parent company* would write down *$6 billion* on the value of mortgage securities, Am.

23  Compl. ¶ 37; several issuers of mortgage-backed securities *selected by MSIM* released troubling

-10-

1    announcements regarding mortgage-backed securities throughout 2007, *id.* ¶¶ 36-41; and in

2    December 2007, Standard & Poor's reduced its ratings on about *$7 billion* of Alt-A mortgage

3    securities as a result of a sustained surge in mortgage delinquencies.  *Id.* ¶ 42.  If true, such

4    allegations render it plausible that MSIM knew or should have known of the impending crisis at

5    the relevant time, and questioned whether the Plan's investments were still sound.

6         MSIM's arguments, if correct, suggest that it might well have a compelling defense to

7    offer during the later stages of this litigation.  They do not, however, alter the conclusion that

8    Plaintiffs have adequately stated a claim for breach of the duty of prudence imposed by ERISA.

9    To the extent that the majority takes up MSIM's invitation to assess the strength of Plaintiffs'

10   allegations, such analysis is premature at this juncture.

11        **C.      *The Majority's New Pleading Requirement***

12        In evaluating whether Plaintiffs sufficiently allege that MSIM acted imprudently, the

13   District Court and the majority purport to merely assess whether the Amended Complaint states a

14   plausible claim of imprudence regarding the process by which MSIM made the challenged

15   investment decisions.  But in doing so, both impose, *sub rosa*, a novel heightened pleading

16   requirement.

17        The majority holds that "a claim for a breach of fiduciary duty under ERISA may survive

18   a motion to dismiss – even absent any well-pleaded factual allegations relating directly to the

19   methods employed – if the complaint 'alleges facts that, if proved, would show that an adequate

20   investigation would have revealed to a reasonable fiduciary that the investment at issue was

21   improvident.'"  Maj. Op. at 17 (quoting *In re Citigroup*, 662 F.3d at 141).  But the majority goes

22   on to say that where a plaintiff relies on inferences from circumstantial allegations, "this standard

23   generally requires the plaintiff" to allege facts showing "that a prudent fiduciary in like

-11-

1    circumstances would have acted differently." Maj. Op. at 20, 32. The majority thus announces a

2    new and unjustified hurdle which ERISA plaintiffs must surmount in order to vindicate their

3    statutory rights. It finds that Plaintiffs are unable to meet this standard because they have

4    inadequately tied the alleged "warning signs" to specific securities held in the Portfolio, Maj. Op.

5    at 21-24, and failed to suggest why MSIM should have sold those investments "at whatever

6    unspecified prices existed during the unspecified period in which it was imprudent to maintain

7    those unspecified investments." Maj. Op. at 21.

8         The majority's heightened pleading requirement finds no support in the only guideposts

9    that matter at the pleading stage: Rule 8 and the standards articulated by the Supreme Court in

10   *Twombly* and *Iqbal*. Rule 8 merely requires a complaint to contain "a short and plain statement

11   of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). I fail to see

12   how the "short and plain statement" standard requires plaintiffs to outline in their complaints a

13   more prudent course of action that the fiduciary should have taken.

14        Instead, Rule 8 permits a plaintiff to pursue a claim based on allegations which only

15   indirectly show plausibly unlawful behavior, so long as the facts pleaded give the defendant fair

16   notice of the claim, and allow the court to draw the reasonable inference that the plaintiff is

17   entitled to relief. *Braden*, 588 F.3d at 595 (citing *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at

18   678). To withstand dismissal, then, it is sufficient if the allegations in the complaint, accepted as

19   true, give rise to the reasonable inference that the fiduciary's process was flawed. *See id.* at 596.

20   Where, as here, plaintiffs have identified the actions which were allegedly inappropriately risky,

21   defendants are unquestionably on notice as to basis of the claim at issue. The rules of notice

22   pleading require nothing more.

1    Moreover, the majority's newly articulated pleading requirement ignores the practical

2    reality that plan participants' often lack access to relevant information and incentivizes

3    fiduciaries to keep their actions concealed.  While ERISA imposes certain disclosure

4    requirements on plan administrators, there is no suggestion that these disclosures address *how* or

5    *why* investment decisions were made.  *See* Maj. Op. at 19.  The consequence of the majority's

6    holding is that the federal courts will often dismiss claims by ERISA plaintiffs who have not yet

7    had an opportunity to employ appropriate discovery to develop their case.  This is not what

8    Congress intended when it enacted ERISA and subjected plan fiduciaries to the highest duties

9    known to law.  *See Donovan*, 680 F.2d at 272 n.8.

10    Furthermore, while ERISA plaintiffs may – as the majority suggests – generally have

11    access to plan documents and reports that will provide them "the opportunity to find out how the

12    fiduciary invested the plan's assets," Maj. Op. at 19, this does not mean that plaintiffs are

13    somehow obligated to include such information in their complaints to survive a motion to

14    dismiss.  In other words, plaintiffs of all stripes may have access to mountains of evidence prior

15    to discovery, but that does not change the fact that at the pleading stage all that is required is "a

16    short and plain statement of the claim" showing an entitlement to relief.  *See* Fed. R. Civ. P.

17    8(a)(2).  The Supreme Court has said that a complaint need not contain "detailed factual

18    allegations." *Iqbal*, 556 U.S. at 678.  I am not alone in taking the Court at its word; we have

19    similarly emphasized that *Twombly* and *Iqbal* do not "require the pleading of specific evidence

20    or extra facts beyond what is needed to make [a] claim plausible." *Arista Records,* 604 F.3d at

21    120-21.

22    In light of the foregoing, I agree with the majority to the extent it holds that ERISA

23    plaintiffs may state a claim for breach of the duty of prudence by alleging facts that "if proved,

-13-

1    would show that an adequate investigation would have revealed to a reasonable fiduciary that the

2    investment at issue was improvident."  Maj. Op. at 17.  But in my view, Plaintiffs have met this

3    burden, and cannot be expected to further allege facts "showing that a prudent fiduciary in like

4    circumstances would have acted differently."  Maj. Op. at 20.

5                                            **CONCLUSION**

6              For the reasons stated above, I would vacate the District Court's dismissal of Plaintiffs'

7    Prudence Claim, and remand for further proceedings.

8              Because I agree that Plaintiffs' remaining claims were properly dismissed, I join the

9    majority in affirming the dismissal of those claims.

-14-